GEORGE W. MINIER, JR., ET AL., APPELLANTS, V. BURT COUNTY ET AL., APPELLEES.*

FILED FEBRUARY 27, 1914. No. 18,334.

1. Statutes: AMENDMENT: CONSTITUTIONAL PROVISION. An act of the legislature, which is complete in itself, does not violate section 11, art. III of the constitution, which provides: "No law shall be amended unless · the new act contain the section or sections so amended and the section or sections so amended shall be repealed," although it may by implication repeal or modify some existing statute affecting the general subject of the new act.

2. ———: ———: ———. An act, to be complete in itself within the above rule, must have "one main and general subject," and must not be "in effect simply amendatory." *Van Horn v. State,* 46 Neb. 62.

3. ———: ———: VALIDITY. The subject of the act of 1913 (laws 1913, ch. 101), was to provide a method of raising funds for the erection of county buildings, and the provision it makes is in addition and supplementary to the statutes already existing for that purpose. It does not contain the section or sections so amended, nor repeal such sections. It is therefore a violation of section 11, art. III of the constitution and void.

·APPEAL from the district court for Burt county: ALEXANDER C. TROUP, JUDGE. *Reversed with directions.*

*Stout, Rose & Wells,* for appellants.

---

*Rehearing denied. See opinion, p. 483, *post.*

*E. D. Wigton,* *W. M. Hopewell* and *John P. Breen,* contra.

SEDGWICK, J.

In August, 1913, the board of supervisors of Burt county levied a tax of five mills for the purpose of purchasing grounds and erecting a courthouse and jail building for the use of the county. These plaintiffs, as residents, electors and taxpayers of the county, began this action in the district court for Burt county to cancel the levy, and to enjoin the various officers of the county from proceeding further in the matter, and from extending the levy upon the tax lists and collecting the same. The district court sustained a general demurrer to the petition and dismissed the case, and the plaintiffs have appealed.

The proceedings of the county board were in pursuance of chapter 101, laws 1913. It is contended by the plaintiffs that the act of 1913, ch. 101, is unconstitutional and void as violative of section 11, art. III of the constitution, which provides that "no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed." The act of 1913 is entitled "An act to authorize and empower the county board in any county in this state to make a levy upon the taxable property of said county for the purpose of erecting a courthouse or jail upon petition signed by 51 per cent. of the legal voters of said county." The first section of the act is as follows: "That the county board of any county in this state is hereby authorized and empowered to make a levy, not exceeding five (5) mills upon the dollar, on all taxable property in said county, for the purpose of providing a fund for the erection of a courthouse or jail. The proceeds of such levy shall be known as the special courthouse or jail fund, and may be used only in the construction of a courthouse or jail and the tearing down of any existing courthouse or jail and improvements upon said courthouse or jail grounds. The total estimated amount to be raised by such

special levy shall not exceed the sum of one hundred thousand dollars ($100,000), and said levy may be spread over a term of years, not exceeding three years, to produce such estimated sum. Provided, that in no case shall the levy of taxes made by the county board for all purposes, including the taxes levied as herein provided for the erection of a courthouse or jail, exceed in any one year the sum of one and one-half (1½) dollars on the one hundred ($100) dollars of the assessed valuation." The second section provides that the board cannot make such levy except upon the petition of 51 per cent. of the legal voters in the county.

In 1879 a statute was enacted entitled "An act concerning counties and county officers." Laws 1879, p. 353. It was a very comprehensive act containing 153 sections, and was held to be constitutional. *State v. Page*, 12 Neb. 386. Section 22 of the act defined the powers of the counties: Sections 23 and 24 the powers of the county boards. By the first subdivision of section 25, it was made the duty of the county boards "to cause to be annually levied and collected taxes authorized by law for county purposes, not exceeding one dollar and fifty cents on the one hundred dollars valuation, unless authorized by a vote of the people of the county, and in addition thereto sufficient to pay the interest, and create a sinking fund for the payment of the principal, of all indebtedness which existed at the time of the adoption of the constitution, November 1, 1875." The second subdivision made it the duty of the board "to erect or otherwise provide, when necessary, and the finances of the county will justify it, and keep in repair, a suitable courthouse, jail, and other necessary county buildings, and to provide suitable rooms and offices for the accommodation of the several courts of record, the county board, clerk, treasurer, sheriff, and clerk of the district court, and to provide suitable furniture therefor. But no appropriations shall be made for the erection of any county buildings, without first submitting the proposition to a vote of the people of the county at a general election, and the same is ordered by two-thirds of the legal

voters voting thereon." Section 26 provided that "whenever the county board shall deem it necessary to assess taxes, the aggregate of which shall exceed the rate of one dollar and fifty cents per one hundred dollars valuation of the property of the county, except when such excess is to be used for the payment of indebtedness existing at the adoption of the constitution," the question of levying such excess should be submitted to "a vote of the people of the county at the next election for county officers." The following section provided the method of submitting the question to the vote of the people; and section 30 provided that two-thirds of the votes cast must be in favor of the proposition in order to authorize the levy.

By chapter 28, laws 1887, section 26 of the former act was amended so as to allow the vote to be taken at a general or special election called for that purpose; and the second subdivision of section 25 was amended, omitting the words "when . * * * the finances of the county will justify it," and modifying the provision that no appropriation should be made for the erection of county buildings without a vote of the people, so that such appropriation, not exceeding $1,500, could be made by the board without such vote. This subdivision was also amended so that the vote of the people, when more than $1,500 was to be appropriated, could be taken at a general election or a special election called for that purpose, and this amendment also authorized the issue of bonds for such purpose upon a vote of the people. In 1889 (laws 1889, ch. 10) this section was amended so as to provide for a majority instead of a three-fifths vote; and, as so amended, the section was re-enacted in chapter 30, laws 1909. Each of those amending statutes contained the sections so amended and repealed the sections as theretofore existing.

These were the provisions of the act of 1879 upon the general subject of providing funds for erecting county buildings. The board of supervisors was authorized to levy the full amount of taxes for county purposes, $1.50 on the valuation of $100 for any one year, but not exceeding that amount, unless authorized by a vote of the

people, and was authorized to appropriate a part of this general levy for the purpose of erecting county buildings. The county board was authorized to levy $1.50 on the $100 valuation for general county purposes, in addition to the levy necessary to pay indebtedness existing at the adoption of the present constitution. The board could appropriate a part of this general levy to erect county buildings, and they might make a larger levy than $1.50 on the $100 valuation for general county purposes, in addition to the levy necessary to pay indebtedness existing at the adoption of the present constitution, if authorized by a vote of the people. Under the statute, as so amended, the county board might also borrow money upon the bonds of the county for the purpose of providing county buildings, but they could not appropriate from the general levy, nor provide by issuing bonds, more than $1,500 for that purpose, unless such action was authorized at a general or special election "by a majority of the legal voters voting thereon."

In 1895 there was further legislation upon the subject of providing funds for the erection of county buildings. Laws 1895, ch. 27. The title of the act was: "An act to levy a tax to create a special fund for the purpose of erecting a courthouse and other public county buildings." This act provided that the county board might submit to the people of the county "a proposition to vote a special annual tax for that purpose of not to exceed five mills on the dollar valuation of the taxable property in said county, for a term not to exceed five years." Section 1. It did not repeal nor purport to amend the former provisions for raising funds for this purpose. On the other hand, it provided in section 8: "This act shall not be construed as to be in conflict with any law now in force authorizing the issuing of bonds for such purposes, but as additional thereto." The language of the first section of the act, in regard to the election at which the matter should be submitted to the voters, was in some respects uncertain, and, apparently to remedy this defect, the following legislature repealed the first section of the act and

enacted another section in its place. This amended section provided that the matter should be submitted to the people "at a special election called by the board of county commissioners for that purpose." Laws 1897, ch. 22. Twelve years later the section was again amended. Laws 1909, ch. 31. The only change made was that it might be submitted "at a general or a special election called by the board of county commissioners for that purpose." This statute originally, and as amended, provided that the county board might submit such a question upon its own motion, and that it must submit it "upon petition of not less than one-fourth of the legal voters of said county." Whether this act was unconstitutional as attempting to amend the former provisions for providing funds for county buildings without repealing those provisions does not appear to have been presented to this court. Under section 25 of the original act of 1879, as amended by the acts of 1887 and 1889 above cited, the county board might make the general levy of $1.50 on the $100 valuation without any vote of the people, and might appropriate a part of that levy for the purpose of providing county buildings, but could not so appropriate for that purpose more than $1,500 without such vote. The only additional power in that regard given to the county board in the act of 1913 is the power to appropriate a larger amount for that purpose, and this power is made to depend upon the petition of 51 per cent. of the legal voters, instead of the vote of the people at an election held for that purpose.

The contention is that this is an independent act complete in itself and cannot be regarded as an amendment of the former provision upon this subject, and is therefore not within the prohibition of section 11, art. III of the constitution. It is evident that the legislature intended that the former provisions for raising funds for this purpose should remain in force, and that the method of raising funds for county buildings provided by this last act should be in addition to all other methods to be used by the county board at their option. The third section of the act of 1913 so provides in these words: "This act is cumu-

lative and is not to be regarded as repealing or modify-
ing any provision of the statutes now in force which pro-
vide for submitting to a vote of the people the proposition
to raise funds for the erection of a courthouse or jail."
Laws 1913, ch. 101.  The original act, as amended and still
in force, provides that the county board may raise funds
for that purpose by the regular 15 mill levy without a vote
of the people, provided that they do not require more than
$1,500.  This statute provides that they may raise the
funds in the same manner to the amount of $100,000 if
the proper petition is filed.

The title of the act of 1879 was as general and compre-
hensive as it could well be "concerning counties and coun-
ty officers."  The board of supervisors are county offi-
cers, and county buildings are the property of the coun-
ties.  This title was held to be sufficient to cover all the
duties of the board of supervisors, and all the powers
and rights of property of counties.  It made it the duty
of the supervisors to provide county buildings and made
provision for the raising of funds for that purpose.  By
that act no appropriation for public money in excess of
$1,500 can be made for public buildings without a vote of
the people.  By this act of 1913 that amount is increased
to $100,000, and that appears to be substantially the pur-
pose and intention of the act.  Under our former acts it
was the vote of the people that controlled, if the amount
to be levied was more than the regular 15 mills, or the
amount to be appropriated was more than $1,500.  Under
this act the same thing is accomplished without the vote
of the people, but the petition prescribed is substituted
therefor.

The courts will not declare an act of the legislature
void as violating the constitution unless such conclusion
is unavoidable.  But the people have by their constitution
placed limitations upon the legislature as well as upon
the executive and judicial departments of their govern-
ment.  The duty of enforcing these limitations is placed
upon the courts; no other way is provided; and when at-
tempted legislation is plainly and unequivocally prohib-

ited by the constitution the courts must so declare. The constitutional limitation that "no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed" (Const., art. III, sec. 11) has been very many times construed and applied by this court. In the early history of the state it was decided that an act "complete in itself" did not violate this provision of the constitution, although it might incidentally change the law in some particulars as contained in prior legislation. This principle has been uniformly adhered to, and in such case the question at once arises, Is the act which is being considered complete in itself? This question is not always easy of solution, and there have been many decisions which discuss the question as to when an act is to be considered "complete in itself." This court has been very liberal in construing an act to be complete in itself for the purpose of upholding it.

As an example of this, the case of *Allan v. Kennard*, 81 Neb. 289, may be cited. In that case a statute which created the office of county comptroller was construed to be complete in itself. In the opinion of the court, which was written by Judge Letton, it was said: "Chapter 36 seems to be complete in itself, creating a new office upon sufficient reasons and prescribing the functions and duties and compensation of the incumbent of the office thus created," and the rule which was derived from the facts in that case was stated in the fourth paragraph of the syllabus: "An act which treats of one department of county government, the creation of a county office, and the duties and functions to be performed by the incumbent of such office, is complete in itself, repeals by implication all acts and parts of acts repugnant thereto, and is not required to contain all the sections of former acts which it may amend, or to specifically repeal the same." The opinion, among other cases, cites the case of *Van Horn v. State*, 46 Neb. 62. The opinion in that case, by Mr. Commissioner Irvine, discusses various questions touching the constitutionality of the act there considered,

some of which appear to have been thought to be of more importance and difficulty than the precise question now before us; but the discussion of this question, so far as it goes, is quite satisfactory. In that case the act was to provide for township organization. The title is quite comprehensive, and, among other things, provides for the repealing of some of the then existing statutes. The opinion discusses the distinction between the duties and prerogatives of county officers and the duties of township officers, and says: "Bearing in mind this distinction, we think it will be apparent at once that the act of 1895 has but one main and general subject, to wit, the organization of townships and the government thereof." The opinion finds that the act to provide for township organization had "but one main and general subject," and that it completely covered that subject without assistance from any other act, and the rule of law derived from this discussion is stated in the seventh paragraph of the syllabus, in which it is said that the provision of the constitution above quoted "has no application to acts complete in themselves, and not in their effect simply amendatory."

The question, then, in this case is, What is the subject of the act of 1913? If its subject is the raising of funds for providing county buildings, it is not complete in itself, as that subject was completely covered by the statute of 1879 and its amendments. If that was not the subject of this act which we are construing what then was the subject? Will it do to say that its subject was to provide another method for raising funds for public buildings? Was its subject the substitution of a petition in place of an election to authorize the county board to levy taxes for such funds? Was the substitution of $100,000 as the amount that might be levied for such purposes without a vote of the people in place of the former limitation of $1,500 the subject of legislation in this act? Can any of these supposed subjects be thought to be distinct subjects and complete in themselves? Unquestionably the general subject of this legislation is to provide a method of rais-

95 Neb. 31

ing funds for the erection of public buildings, and the provision it makes is in addition and supplementary to the provisions already existing for that purpose. It therefore enlarges the means for raising such funds, and must be considered as amendatory of the former acts. If such legislation is permissible under the constitutional provision above quoted, it would be difficult to suggest any legislation that would be affected and controlled by that provision. The declaration of the legislature that the act is cumulative and must not be regarded as "modifying any provision of the statute now in force" does not alter the situation nor help the matter. This declaration is an attempt to make the substitution of the petition for the vote of the people in raising funds for this purpose and increasing the amount that can be raised without such vote a distinct subject of legislation, but the subject of legislation is not the petition and the specific amount that can be raised, but the raising of the funds for erecting county buildings, and no declaration of the legislature can change that fact. This act of 1913, then, attempts to amend the law without containing the section or sections so amended and without repealing those sections, and so violates the constitution.

The judgment of the district court is reversed and the cause remanded, with instructions to enter a decree enjoining the defendants, as prayed in the petition.

REVERSED.

ROSE, J., took no part in the decision.

LETTON, J., dissenting.

Under the principles announced in *State v. Ure*, 91 Neb. 31; *Stewart v. Barton*, 91 Neb. 96; *Allan v. Kennard*, 81 Neb. 289, and *State v. Hevelone*, 92 Neb. 748, I think the statute does not violate the constitutional provisions, though I admit that, if the earlier cases in this court cited in the opinion were followed, it is a very close question. I prefer the more liberal construction of the late cases and therefore dissent. Moreover, the former statutes all in-

clude "other county buildings," while the present statute applies only to courthouses and jails.

The following opinion on motion for rehearing was filed April 17, 1914. *Rehearing denied:*

PER CURIAM. A motion for rehearing is filed, and it appears that there is an omission in the third paragraph of the syllabus of the opinion, *ante,* p. 473. That paragraph should read: "The subject of the act of 1913 (laws 1913, ch. 101) was to provide a method of raising funds for the erection of county buildings, and the provision it makes is in addition and supplementary to the statutes already existing for that purpose, and materially alters and amends the same. It does not contain the section or sections so amended, nor repeal such sections. It is therefore a violation of section 11, art. III, of the constitution, and void."

Prior to the act of 1913 the original statute provided that "no appropriations shall be made for the erection of any county buildings, without first submitting the proposition to a vote of the people of the county at a general election, and the same is ordered by two-thirds of the legal voters voting thereon." Laws 1879, sec. 25, subd. 2, p. 361. It was found that it is sometimes necessary to expend a small amount of money for furniture and repairing county buildings, and by the act of 1887 (laws 1887, ch. 28) this statute was changed so that no appropriation exceeding $1,500 could be made without a vote of the people. In that condition the statute stood until the act of 1913 was enacted. By the act of 1913 an appropriation of $100,000 can be made without a vote of the people. This is clearly amendatory of the statute existing before that time. Also by the act of 1913 a petition could be substituted for a vote of the people. This was also an amendment of the prior statute, so that there can be no doubt that the prior statutes as they existed were amended by the act of 1913, and were not repealed nor contained in the new act. This seems to be as plain a violation of the constitution as any we will ever have, and we cannot up-

hold the statute without ignoring or virtually repealing this provision of the constitution.

The motion for rehearing is

OVERRULED.

REESE, C. J., and LETTON, J., dissent.