**UNITED STATES of America,**
**Appellant,**

v.

**64.88 ACRES OF LAND, MORE OR LESS, SITUATE IN ALLEGHENY COUNTY, PENNSYLVANIA, and Charles F. Chubb, et al.**

**No. 12064.**

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1957.

Decided April 24, 1957.

S. Billingsley Hill, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., D. Malcolm Anderson, Jr., U. S. Atty., John R. Gavin, Asst. U. S. Atty., Pittsburgh, Pa., Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Alexander Black, Pittsburgh, Pa. (John H. Morgan, Smith, Buchanan, Ingersoll, Rodewald & Eckert, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The United States is here appealing from an order of a district court dismissing a complaint and setting aside a declaration of taking in a condemnation proceeding initiated in the interest of the Department of the Air Force. The principal issues are whether the complaint and declaration of taking adequately describe the property interest the government proposes to take and whether the proposed acquisition and its intended use are shown to be within legislative authorization.

We turn first to the complaint and the declaration of taking to see what property the government seeks and for what purpose. The stated objective of the Air Force is "the removal and prevention of flight hazards on land under private ownership at the western end of Runway 1028, Greater Pittsburgh Airport." To that end the government proposes to subject appellee's land to a "clearance easement." Specifically, the government seeks to acquire the right to remove and the right to prevent the replacement or restoration of all obstructions, natural as well as artificial, which shall be of sufficient altitude to impinge an exactly located imaginary inclined trapezoidal plane extending across and above appellee's land. These rights of removal explicitly apply to all natural growth, all man made structures and even the earth itself where hilly portions reach the altitude of the limiting plane. Rights of ingress and egress to maintain this clearance are also asserted. The space to be cleared and kept free of obstruction is schematically indicated on a topographic map, made part of the amended declaration of taking, which shows both the position of the controlling planes with relation to actual elevations of ground level and, in profile, the existing obstructions, the removal of which would be authorized.

We think this description is clear and unambiguous. It specifies without any doubt or uncertainty what may be removed by the government and to what elevation above ground level the landowner remains free to build at any given place on his tract. Appellee does not deny this.

Nevertheless, appellee insists that in effect the government is, or may be, imposing on his land a greater servitude than is actually asserted. Appellee is apprehensive that the government may be taking, or as a result of this taking will claim, a right to fly aircraft very low over his land. The government denies that it is taking any right to fly in the air space above appellee's land or that it contemplates claiming any right of flight beyond that which, under the rationale of United States v. Causby, 1946, 328 U.S. 256, 66 S.Ct. 1062, 90 L. Ed. 1206, exists at all times without any taking from the landowner below. In this connection it is pointed out that the elevations defining the altitude above which no obstructions are to be permitted are substantially lower than any flight path which could lawfully be used or approved for approaching the present Greater Pittsburgh Airport under the regulations of the Civil Aeronautics Authority.

On this record it must be accepted that the claimed right of clearance is merely a provision for assuring that space shall be unoccupied and vision

unobstructed above a designated altitude. Unquestionably, this is in aid of avigation. But no flight easement is mentioned or to be inferred, much less claimed, in the present pleadings and, therefore, no servitude can be imposed except for the asserted and precisely limited rights of clearance. United States v. 48.10 Acres of Land, S.D.N.Y.1956, 144 F.Supp. 258; United States v. 4.43 Acres of Land, N.D.Tex.1956, 137 F. Supp. 567. It is well established that, absent bad faith which is not argued here, the government's determination and explicit assertion of the nature and extent of the estate to be taken are not judicially reviewable. United States v. Kansas City, 10 Cir., 1946, 159 F.2d 125; United States v. Meyer, 7 Cir.1940, 113 F.2d 387; Simmonds v. United States, 9 Cir.1952, 199 F.2d 305. If any subsequent low flying of aircraft over appellee's land should occur and should be said to invade property rights, the acquisition of the right to keep that space clear will not have conferred any attendant right to fly through it. As another court has aptly said in a similar situation:

> " * * * since the Government has not acquired a right to fly aircraft over the condemnees' land by these proceedings, it follows that, if the Government does cause its aircraft to make flights over the lands of these defendants, or has already done so, at such elevation and with such frequency as to result in taking beyond that described in the Declaration of Taking on file in these cases, or in actual physical damages, the landowners would have a right to bring suit against the Government for damages or just compensation." United States v. 4.43 Acres of Land, N.D.Tex.1956, 137 F.Supp. 567, 572.

■ But even if the rights taken are sufficiently described, appellee argues that the clearance easement is claimed in connection with approaches to the Greater Pittsburgh Airport without any showing that the Department of the Air Force has any such interest in the airport as would make the clearance of approaches an appropriate public use or an appropriate function of the Air Force. Appellee would require that the government's formal claim spell out some property right or operational arrangement of the Air Force at the Greater Pittsburgh Airport to which the clearance easement is related.

We think that such a showing is not necessary here. We do not know of any constitutional doctrine which restricts the government's taking of easements in private land to those easements which are appurtenant to a neighboring tract owned or controlled by the United States. Moreover, we think the relevant circumstances of this case have been made reasonably clear. The Air Force proposes to improve visibility and reduce hazards along the approaches to the Greater Pittsburgh Airport. As will appear in greater detail in the following paragraphs, Congress has expressly authorized the Air Force to undertake an airport improvement program at the Greater Pittsburgh Airport. If the taking as proposed appears to be within this legislatively authorized program there is no occasion for a court to demand a statement specifying the present property rights of the United States or elaborating the present operational interest of the Air Force in this airport.

■ What has been said brings us to, and ties in with, the final major point on this appeal. Is this such a taking and for such a use as Congress has sanctioned? The government relies upon several statutes. Without considering all of them we are satisfied that the Act of July 27, 1954, 68 Stat. 535, comprehends the circumstances of this taking.

In Title III of that Act there is specific authorization for an Air Force project at the Greater Pittsburgh Airport defined in the following terms:

> "Sec. 301. The Secretary of the Air Force is authorized to establish or develop military installations and facilities by the construction, conversion, rehabilitation, or installation of permanent or temporary pub-

lic works in respect of the following projects, which include site preparation, appurtenances, and related utilities and equipment. * * *

\* \* \* \* \* \*

"Greater Pittsburgh Airport, Coraopolis, Pennsylvania: Liquid fuel storage and dispensing facilities, communications and navigational aids, utilities, land acquisition, medical facilities, and personnel facilities, $245,000, which amount is included in the authorizations in Public Laws 910, 155, 534, and 209." 68 Stat. 543, 548.

Section 501(a) of Title V of the same Act gives the Secretary of the Air Force:

"The authority to establish or develop military installations and facilities [which] shall include, in respect of those installations and facilities as to which the acquisition of land is specified in titles I, II, and III of this Act, authority to acquire lands and rights and interests thereto or therein, including the temporary use thereof, by donation, purchase, exchange of Government-owned lands, or otherwise." 68 Stat. 560.

Thus Section 301 authorizes a rather comprehensive Air Force program at the Greater Pittsburgh Airport, with express provision for "communications and navigational aids", while Section 501(a) authorizes the Secretary of the Air Force, in connection with this and other projects, "to acquire lands and rights and interests thereto or therein." In our view the clearance of surrounding air space sought in this condemnation proceeding is fairly included within the meaning of "navigational aids" as that phrase is used in the legislative description of the authorized Pittsburgh project. Accordingly, we find adequate statutory authority for the present taking in this 1954 Act without reference to any other enactments.

On the whole case we have concluded that the court below erred in ruling that the complaint and declaration of taking are legally insufficient.

The judgment will be reversed and the cause remanded with directions to reinstate the complaint and the declaration of taking, as amended.