GEORGE E. SMITH, APPELLEE, v. JOHN DAMATO, EXECUTOR OF THE ESTATE OF GRACE R. DAMATO, DECEASED, APPELLANT.

112 N. W. 2d 21

Filed December 1, 1961. No. 35005.

McGinley, Lane, Mueller & Shanahan and Kennedy, Holland, DeLacy & Svoboda, for appellant.

Francis A. McLane, Schrempp & Lathrop, and Henry C. Rosenthal, Jr., for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

This is an action arising under the guest passenger statute, section 39-740, R. R. S. 1943. It involves the issue of gross negligence.

Plaintiff was a guest passenger in an automobile driven by Grace R. Damato. The driver was instantly killed in the accident. The defendant is the executor of her estate.

Issues were made and trial had resulting in a verdict for the plaintiff. Defendant appeals.

We affirm the judgment of the trial court.

The accident occurred when the Damato car ran into the rear end of a highway grader of the state.

Plaintiff pleads negligence in the following particulars: The driver of the Damato car drove at a high and dangerous rate of speed; failed to keep the automobile under control; failed to keep a proper lookout; failed to consider warning signs of the hazardous condition of the highway; and failed to apply her brakes, slow down, or stop to avoid the collision.

The answer was a general denial.

At the close of the plaintiff's case-in-chief and again at the close of all evidence, defendant moved for a directed verdict which motions were severally overruled. The defendant later moved for judgment notwithstanding the verdict or for a new trial. These motions were denied.

There was evidence from which a jury could have found these facts to be true. Substantially, they are not in dispute.

The accident occurred on a clear, sunny afternoon in late August 1957. The place of the accident was a few miles west of Thedford, Nebraska, on State Highway No. 2. This highway, at the place involved, runs generally east and west. It was a two-lane, black-top highway. The accident occurred in the valley bottom between two hills.

All vehicles referred to herein were moving in an east to west direction. At the top of the hill to the east were signs reading "Road Repairs Ahead" and "Men Working." Above these signs were red flags. The signs were placed on the right-hand side of the road and facing westbound traffic. The road grader was visible at all times from the crest of the hill to the valley bottom, a distance of about a quarter of a mile or more.

The grader was at the bottom of the valley. It was painted yellow, about 9 to 11 feet in height with a 14-

foot wide blade. It weighed about 11 tons and at the time of the accident was pushing about 3 tons of road surface material and traveling at a speed of 3 miles an hour. It was operating on the right, or westbound, side of the road.

There were three westbound automobiles.

The first one turned to the left and was about opposite the grader, on the left-hand side of the road, when the collision occurred. It continued west. No testimony is given by its occupants.

The next car came over the hill at a speed of about 60 miles per hour. Its driver saw the signs, slowed down, and stopped before the grader was reached. It was then moved to the left-hand side of the road preparatory to passing the grader. It was about 25 to 50 feet behind and to the left of the grader when the Damato car ran into the rear of the grader. So far as this record reveals, no one saw the Damato car before the impact.

The Damato car hit the grader head-on with sufficient force to break into three pieces a railroad rail welded on the rear of the grader and break off one of its large drive wheels. The front end of the Damato car was pushed back so that Mrs. Damato was crushed behind the steering wheel and instantly killed. The plaintiff, sitting on the right-hand side of the front seat, was seriously injured. There were no skid marks on the highway behind the grader.

We are here confronted with the argument that plaintiff's case rests on circumstantial evidence. We discussed the distinction between direct and circumstantial evidence in Bland v. Fox, *ante* p. 662, 111 N. W. 2d 537. What we said there is applicable here. The evidence heretofore recited is direct evidence. The question here is whether, from the evidence recited, a jury could properly draw the conclusions of negligence alleged and whether or not such conclusions constitute gross negligence.

We conclude that a jury could properly conclude that Mrs. Damato was guilty of the negligence charged. Does it constitute evidence of gross negligence sufficient to take the issue to the jury?

We see no reason for restating the generally established rules dealing with this subject.

In Thompson v. Edler, 138 Neb. 179, 292 N. W. 236, we held: "In an action for gross negligence under the automobile guest statute (Comp. St. Supp. 1939, sec. 39-1129), where there is adequate proof of negligence, a verdict should be directed for defendant only where the court can clearly say that it fails to approach the level of negligence in a very high degree under the circumstances. In all other cases, it must be left to the jury to determine whether it amounts to gross negligence or to mere ordinary negligence." The reasoning and language of that case was followed in Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591, where we held: "It is apparent that no one act of the defendant can be separated from the whole of these acts and held to be the independent cause of this accident. Under these circumstances, each act is not to be segregated and weighed separately to determine whether or not it constituted gross negligence. The several acts are to be considered as a whole. While each of several acts, standing alone, may not exceed the bounds of ordinary negligence, yet, taken together, they may establish gross negligence. In such cases, it is for the jury to determine whether a defendant is guilty of gross or ordinary negligence. A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach the degree of negligence that is considered gross. Here the jury were not bound to find that defendant's acts were negligence in a very high degree, but a jury question was in our opinion presented as to whether or not, under the circumstances here, the things which defendant did and failed to do

amounted to negligence in a very high degree, i. e., gross negligence."

We reiterated this holding in O'Neill v. Henke, 167 Neb. 631, 94 N. W. 2d 322. What we there said is applicable here.

The evidence here, when reviewed as a whole, is sufficient to sustain a finding of gross negligence. The trial court did not err in submitting the issue of gross negligence to the jury.

The next argued contention is that of misconduct of plaintiff's counsel in his closing argument to the jury.

It appears without dispute that Mrs. Damato and her husband were separated; that Mrs. Damato had used the name of Smith; that she had at various times given plaintiff's address as her address; and that her driver's license and other identification papers were issued, as was the certificate of title to the car, in the name of Smith.

As a matter of evidence, the ownership of the car and that Mrs. Damato was its driver were not in dispute. Defendant, from the opening statement to the jury down to his closing argument in this case, injected into this case the suggestion of an illicit relationship between plaintiff and Mrs. Damato. Neither its existence nor its relevancy is apparent. If it were relevant, it would be the burden of plaintiff to establish the identity of Mrs. Damato. Plaintiff fought back with the means at his disposal. The record is replete with argument between counsel and counsel and court.

Plaintiff was not allowed to testify to the happening of the accident because of the provisions of section 25-1202, R. R. S. 1943, the so-called Dead Man's statute. His doctor did testify that plaintiff was the victim of amnesia and had no recollection of what transpired save that there was an accident.

Counsel for plaintiff, in his opening argument to the jury, made reference to the fact that Mr. Smith's lips were closed by the law "and by proper objection of

counsel." He further said he had "no quarrel with the law" but that plaintiff was sitting there "bound and gagged" unable to tell his side of the story; "He can't explain anything that they might insinuate. * * * Don't go for any insinuation"; and "We had to prove our case the hard way, and believe me, it has been a hard way."

Defendant claims prejudicial error. It must be borne in mind that plaintiff was here discussing insinuations repeatedly injected into this case by the defendant that had no apparent relevancy to the issues of the case. Plaintiff was asking the jury to disregard the apparent attempt to blacken the character of both plaintiff and Mrs. Damato and decide the case on the issues which the case presented. It is altogether probable that in the quiet of a law library, plaintiff could have stated his views in a different way. But he was in a courtroom battle where in fact his way had been "a hard way."

Defendant knew when he made reference to these bits of insinuations about Mrs. Damato that plaintiff's lips were closed by the statute, insofar as he had knowledge of them. Knowledge of them by plaintiff does not appear in the record. Defendant cannot now claim prejudice because plaintiff met the attack in the way that he did.

In Sonneman v. Atkinson, 121 Neb. 752, 238 N. W. 532, we refused to reverse the judgment in a law case where counsel for plaintiff was charged with misconduct in respect to his argument to the jury. We there held: "Counsel for plaintiff are also charged with misconduct in respect of their arguments to the jury. Both parties had able, vigorous and apparently zealous advocates. In the temperature reached near the climax of the trial they went about as far as permissible. The court seems to have held them as nearly to the proper standards of conduct as could have been done in the circumstances. The record of the argument indicates that he treated them impartially, and we do not see that defendant was

prejudiced by, or is in a position to complain of, what occurred in the argument to the jury.

"It appears from a ruling of the trial court that much of the complaint arises from the fact that the objectionable remarks were evidently made in answer to the argument of the complaining party who was guilty of the first offense in that regard."

There is a longstanding rule that has application here. "It will not be presumed that passion and prejudice influenced the action of jurors, but it must be affirmatively shown before a verdict will be disturbed." Johnson v Nathan, 161 Neb. 399, 73 N. W. 2d 398.

We do not find prejudicial error under the circumstances of this case.

Defendant contends briefly that there was reversible error in several of the instructions. In effect, the first argument here is that evidence of gross negligence was not produced and that it was error to submit that issue and its elements to the jury. We have disposed of the question above. The assignments are not sustained.

The next assignment of error is that the court did not give the "standardized" instructions on what constituted gross negligence. Error in the instructions is not shown. The assignment is not sustained.

The next assignment of error is based on the premise that the plaintiff's case is "based solely on circumstantial evidence." We have disposed of that contention earlier in this opinion. It is not sustained.

Complaint is finally directed at three instructions given by the court which it is contended, when analyzed, directed a verdict for the plaintiff. The "analyzing" of the defendant does not appear. The instructions purported to state statutory and court announced rules applicable to the case. Error does not appear.

Generally, the burden is on the appellant to show that the trial court erred in charging the jury. 5 C. J. S., Appeal and Error, § 1560, p. 1196. Our longstanding rule has been: "A judgment of the district court is pre-

sumed to be correct, and a party assailing the correctness of it must assume the burden of pointing out specifically the rulings of which he complains and the mistake made by the court." Van Wye v. Wagner, 163 Neb. 205, 79 N. W. 2d 281.

The assignment is not sustained.

The judgment of the trial court is affirmed.

AFFIRMED.