KENNETH M. JOHNSON ET AL., APPELLEES, V. AIRPORT
AUTHORITY OF THE CITY OF OMAHA, APPELLANT.

115 N. W. 2d 426

Filed May 25, 1962.   No. 35069.

*Herbert M. Fitle, Bernard E. Vinardi, Irving B. Epstein, Frederick A. Brown, Benjamin M. Wall, Edward M. Stein, and Steven J. Lustgarten,* for appellant.

*Marchetti & Samson,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This action was originally instituted in the county court of Douglas County, Nebraska, by the Airport Authority of the City of Omaha, a municipal corporation, which will be referred to herein as appellant, to condemn airspaces over lands in the vicinity of an airport operated by the appellant and to condemn obstructions within the designated airspaces. This was done pursuant to power regularly granted to it by section 3-204, R. R. S. 1943, and in accordance with the provisions of statute and of the Nebraska Constitution relating to the taking and damaging of private property for public use,

the character of which was in accordance with a grant or grants flowing from rights contained in legislation of the United States enacted pursuant to the United States Constitution, and particularly the Fifth Amendment. Numerous bodies of land, each with its accompanying airspace, were designated in the proceeding; however only one is involved in the proceeding in this court. The one involved is numbered 15 and it is described as the west 50 feet of Lot 18, East Omaha Acres, lying within the southwest quarter of the southeast quarter of Section 36, Township 16 North, Range 13 East, in Douglas County, Nebraska. The area is owned by Kenneth M. Johnson and Ruth Marie Johnson, husband and wife, as joint tenants. In the proceeding here these parties are appellees.

In due course, in the county court an award was made for damages in favor of the appellees and against the appellant. From that award the appellees perfected an appeal to the district court in which they contended that the award was insufficient to compensate for the damage sustained. After issue was joined a trial was had to a jury and a verdict was returned in favor of appellees for $6,950. Judgment was rendered in this amount together with interest at the rate of 6 percent from August 4, 1959. A motion was filed by the appellant for a new trial, which was overruled. From the judgment and the order overruling the motion for new trial an appeal was perfected.

It appears proper to point out that on the appeal here the regularity of no formal procedural step from the inception of the action in the county court to the present time is attacked. For the purposes of this case specifically it must be accepted that the appellant had the right to condemn; that the proceeding throughout conformed to Nebraska constitutional and statutory rights and procedures; and also that it conformed to the United States constitutional and statutory rights and procedures. These are inevitable inferences which flow from the

assignments of error, which are four in number, as follows:

"I    Error of the Court in giving to the jury Instruction No. 2.

"II    Error of the Court in giving to the jury Instruction No. 10.

"III    Errors of law occurring during the trial with reference to the rulings of the Court, having to do with the admission or rejection of evidence.

"IV    The Court erred in overruling the motion of defendant for a new trial where the verdict was manifestly excessive and clearly wrong."

Facts of concern here about which there is no dispute are that at the eastern edge of the city of Omaha the appellant maintains and operates an airport, under authority of the statutes of the State of Nebraska and of the United States and established regulations, which is capable of handling aircraft of all modern sizes and kinds. On it are established runways for takeoffs and landings of the various kinds of aircraft. In particular it has two runways designed to handle generally northbound and southbound traffic. One is referred to as the northwest-southeast runway and the other as the north-south runway. The former is the longer and is described as an instrument runway. The latter is not an instrument runway. In practice the former has the greater use; but each may be used for the same character and quality of traffic. From a strictly determinative standpoint, in the light of the issues presented by the parties, the former is of little concern herein.

Between the south end of the north-south runway and Adams Street, which is to the south, is a distance of about 1,350 feet. The appellees are the owners of a lot immediately south of Adams Street, 50 feet east and west and 200 feet north and south, on which is located a dwelling house and a garage which is used as a workshop. From the south end of this runway southward the appellant was required to and did obtain an avigation ease-

ment. This easement extended upward and outward and over the property of the appellees. The lowest level of the easement was 26 feet. As pointed out there were two phases of taking. Under one phase was a corporeal taking of two trees which extended above the 26-foot limit, and under the other phase was an incorporeal taking above that height of the right of use and occupancy in the landing and taking off of aircraft.

As has been indicated this total right to condemn and take is not questioned in this case. It may also be said that the appellant does not contend that it is not required to respond in damages for the entire corporeal taking.

The true effect of the presentation of the appellant is that although damages may be recovered on account of the taking under an avigation easement, damage sustained by the incorporeal taking is not compensable. This is the gist of the attack made by the first assignment of error and the argument in support of it. A theory appears to be that since such an easement as this is authorized, empowered, and even commanded under the federal authority, and authorized by Nebraska statutes, damage without physical taking is not compensable.

It is true, as has been indicated, that the avigation easement was commanded properly under federal authority, but it is not true that under either the Constitution and laws of the United States or of the State of Nebraska this frees the taker of the avigation easement from liability for damage caused to the land over which the easement extends.

It is true that damage caused by navigation above or outside the established avigation easement limits is not chargeable to such navigation, but this is not true with regard to that which is within the easement. The reported cases all appear to support this as shown by the cases cited later herein.

Briefly and without attempt or effort to explore its full significance, it is stated that the term avigation applies to the navigation of airspace. In the case here

the concern is with the lawful boundaries of the easement over the lands of appellees and the rights and obligations of the parties in relation thereto.

It is clear of course that land is the physical base of the easement, and the base of the right within which navigation may be carried on is a plane not less than 26 feet above the land. In order to arrive at which is the topmost altitude of the easement it becomes necessary to refer to the Civil Air Regulations adopted under proper authority by the Civil Aeronautics Board. Section 60.17 of the regulations, in the description of minimum safe altitudes, provides that, except for takeoff or landing, the minimum safe altitude in noncongested areas shall be, for a situation such as is involved here, 500 feet above the surface. Obviously this situation was treated for the purpose of the trial as a noncongested area. This was the minimum safe distance. The area above this was free for use. It is described as navigable airspace. Navigable airspace is defined in 49 U. S. C. A. (1962 Supp.), § 1301, p. 143, as follows: " 'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft."

It may well be said therefore that the space between the lower limit of 26 feet above the land of appellees and the minimum safe altitude of 500 feet was the area of the avigation easement involved here.

The appellant argues in effect that this is not a true definition of the easement condemned. It argues that only a flight angle was described and taken and that it cannot be held for damages beyond the limits of the proposed taking described in its proceedings to take.

There is authority for the contention that a condemner may not be held in damages for anything beyond what is described in the proceedings to take. See United States v. Brondum, 272 F. 2d 642. That however is not the situation here. The petition filed in the county court,

which is basic herein, fairly includes all of the area which is pointed out herein as the avigation easement taken by the appellant. This is made clear by the petition which contains the following: "That the members of said Airport Authority have determined the necessity of acquiring easements in air spaces above land and the right to prevent height obstructions in the clear-zone areas * * * in order to provide unobstructed air space for the landing and taking-off of aircraft * * *; that it is necessary * * * to obtain for the benefit of the public in its use of the Airport, the right to prevent the owners or other parties in interest from hereafter erecting, or permitting the erection or growth, of any structure, tree or other object in the air space over any portion of the property hereinafter described higher than the number of feet hereinafter stated above the present ground level or elevation; * * * together with the right of ingress to, egress from, and passage over the tracts of property hereinafter described; * * *."

The legal authorities are in substantial accord in the view that a taking of real property in the establishment of an avigation easement which reduces the value of that to which the easement attaches entitles the owner to damages in the amount of the difference in value before and after the taking. See, United States v. Causby, 328 U. S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206; Griggs v. County of Allegheny, 369 U. S. 84, 82 S. Ct. 531, 7 L. Ed. 2d 585; Wright v. United States, 279 F. 2d 517; Herring v. United States, 162 F. Supp. 769; Dick v. United States, 169 F. Supp. 491; Matson v. United States, 171 F. Supp. 283. The damage contemplated is that which flows from activity in the easement area up to the navigable airspace, which in the instance here appears to be 500 feet. Clearly it could not be less than that altitude above the ground.

It may well be said that the opinions in United States v. Causby, *supra,* and Griggs v. County of Allegheny, *supra,* are not in exact accord in all particulars, but

they are in accord on the proposition that for damage for a taking by the establishment of an avigation easement, as avigation easement has been described and defined herein for the purposes of this case, the owner of the land is entitled to recover.

These observations are a negation of the argument of the appellant in support of its first assignment of error which is an attack upon instruction No. 2 given by the court, which attack is in substance that the jury was improperly told that the appellant had taken an easement for airflight purposes.

For the purposes of clarity, it is pointed out, although it is not presented as an issuable subject in this case, that if there was either a corporeal or incorporeal taking or damaging, the appellees are entitled to recover damages from the appellant as a taking within the meaning of the Fifth Amendment to the United States Constitution. There could be no question as to the corporeal taking, and all of the decisions previously cited herein from the United States courts clearly declare that damage to the value of land caused by navigation within an avigation easement amounts to a taking within the meaning of the Fifth Amendment.

Also, it is pointed out that Article I, section 21, Constitution of Nebraska, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." If it may be said that the state Constitution controls it would be necessary to conclude, even if it should be said that this type of damaging was not a taking, that there would be liability for the damage, it being effectually conceded that the damage flowed from a public use.

As has been pointed out the second assignment of error is an attack upon instruction No. 10. There are two phases to the attack. The first is that it injects the element of operation of aircraft within the easement. As already made clear herein this element is basic in the consideration of the issues and there is nothing in

the instruction which improperly directs consideration of it.

The other phase is a complaint the effect of which is to say that the instruction is improper in its reference to fear as an element of damage. When considered along with the other instructions and controlling legal principles it appears that no prejudicial error is contained. Fear, depending upon its quality and consequences, may be a proper element of damage and the jury was properly instructed thereon.

This court, in defining the quality of fear which may be the basis of recovery of damages in condemnation cases, said the following in Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833: "The only fear which may be considered as an element in fixing value is that of danger, the present or potential existence of which is grounded in authentic observation and experience, or in scientific investigation, and which fear circumscribes activity or limits freedom of use in the area of the present or potential danger, and which tends to lessen the market value of the land." This is supported by cases cited in the opinion and quoted with approval in Lane v. Burt County Public Power Dist., 163 Neb. 1, 77 N. W. 2d 773.

From this and the instructions as to fear it is made clear that the second phase of the attack of the second assignment of error is without merit.

The remaining two assignments of error will be considered together. They refer collectively to the amount of damages which the appellees are entitled to receive and certain evidence which the appellant urges was erroneously received in support of their claim.

The paramount question presented by these two assignments of error is that of whether or not the verdict was excessive. It is not contended that a verdict and judgment in favor of the appellees was improper. There is tacit agreement that they are entitled to damages. There is much difference of opinion as to the amount.

There is no great dispute as to what has been denominated as the corporeal taking. The great dispute relates to the incorporeal taking. Several witnesses were called who gave testimony bearing on the question of damages. The first called on behalf of the appellant qualified as an expert. In brief detail he gave it as his opinion that the land had a value of $600; that the cost of constructed improvements was $10,764; that the depreciation since construction was $2,906, leaving a fair market value at the time of taking of a rounded-off amount of $7,850 for improvements, or $8,450 which included the value of the land; and that after the taking the property was of the value of $7,500. In his opinion the witness attributed $100 to the loss of the trees or corporeal damage, and $850 to incorporeal damage. Thus his opinion was that the property was damaged by the easement in the amount of $950. The former of these valuations was regarded by the witness as the fair market value before the taking and the latter after taking. This "fair market" standard was treated as controlling on the trial and in the instructions to the jury. That standard was stated quite sufficiently for the purposes of this case by the witness, as follows: "Fair market value, * * * is what a willing buyer who did not have to buy would pay to a willing seller who did not have to sell, * * *." Of course the measure of damage is the difference between the value of the property before and after the easement was taken.

This witness gave no consideration whatever in his testimony to the use by the appellant of the area of incorporeal taking prior to and without condemnation or agreement. Under the evidence it is made clear that at least a part of the space in the area of incorporeal taking was used by the appellant prior to condemnation, but there is no evidence that the use was by any lawful authority. He indicated clearly by his testimony that he assumed the use theretofore was of right and therefore based his opinion only on the difference in the

value which was accomplished at the time of taking by condemnation.

No case has been cited the effect of which is to say that wrongful or unauthorized use or taking before the exercise of eminent domain may be asserted in eminent domain proceedings to destroy or defeat the right of a condemnee to recover all of his damages which are incident to the taking. This is of course subject to the possibility that rights may be lost by the operation of statutes of limitation.

Another witness, an expert, was called by the appellant and the approach to the appraisal was substantially the same as that of the first one on the matter of value. He however arrived at a somewhat different result. His opinion was that before the taking the improvements were of the value of $6,984 and that the land had a value of $600, making a total of $7,584. He valued the trees at $400 which was included in the total.

In arriving at these amounts and for the purpose of indicating the value at the time of the taking the witness indicated that there had been a physical depreciation of $2,118 and an economic depreciation of $1,500. It does not appear that he specifically attributed anything in favor of appellees on account of the incorporeal taking.

A third witness, also an expert, was called by the appellant. It is not deemed necessary to do more than to point out that the testimony of this witness in all material and pertinent respects follows closely that of the first witness and arrives at the same results.

The appellant's witnesses attributed no damage to appellees' property except the small amount which is inferable from the testimony of these three witnesses.

As to damage and its character and extent, the appellees called on Richard E. Mooney, who was airport director for the appellant. He described in general the facilities of the airport and its operations particularly with reference to that portion involved herein, the property of the appellees, the north-south runway, the north-

west-southeast runway, the annual number of takeoffs and landings at the airport for the years 1950 to 1960, inclusive, and the kind of craft using the runways and the easement involved here.

He testified in substance that the northwest-southeast runway was the primary runway and that it normally carried the heaviest traffic. Jets and heavier planes usually use this runway. These heavier planes however are not restricted to this runway but are permitted to and do use the one involved here. One is 6,000 feet in length and the other 7,000 feet. The use of the north-south runway depends largely on the direction and velocity of the wind. This runway has since 1950 been sufficient in length to accommodate the largest nonjet aircraft and it would accommodate jets if necessity arose on account of prevailing winds.

Jerome L. Wozny gave testimony as to the use of the avigation area. He said he had seen a heavy plane flown not more than 100 feet above the ground. He had seen one jet plane in the area. He gave it as his opinion that the value of the property of the appellees was $10,000 to $10,500 before the taking and about $2,000 thereafter.

As has been pointed out, there is being considered here collectively two assignments of error. One of these is that the witness Wozny was erroneously allowed to testify, as basis for his opinion as to values, to the sale price of other lands. He was permitted to testify as one of the incidents of his knowledge of values that he knew the sale price of an adjacent similar property.

Assuming that error was involved, it was waived by the appellant. After the testimony was given the appellant adduced evidence on the subject. This evidence of the appellant, it is true, was elicited by cross-examination, but the rule is the same whether it was elicited either on direct or cross-examination. The rule is: "Ordinarily a party may not successfully complain of the introduction of evidence of a like character to that which it subsequently introduced." Sump v. Omaha Public

Power Dist., 168 Neb. 120, 95 N. W. 2d 209.  See, also, George A. Hoagland & Co. v. Scottish Union & National Ins. Co., 131 Neb. 112, 267 N. W. 242; Allen v. Massachusetts Mutual Life Ins. Co., 149 Neb. 233, 30 N. W. 2d 885; 5 C. J. S., Appeal & Error, § 1506 (c), p. 894; 5A C. J. S., Appeal & Error, § 1735 (b), p. 1032.  The third assignment of error is therefore without merit.

The next witness called was Kenneth M. Johnson, one of the appellees.  He described the premises and its uses.  The house is modern, is 1½ stories in height, has 5 rooms, and its dimensions are 24 by 32 feet.  It has automatic oil heat and electric power.  He also described a garage which he uses as a workshop.  There is no dispute as to the physical description of the land and the buildings or as to the use to which they are put. He testified in substance that after the easement was taken flights were at times as low as 25 or 30 feet above the house; that the frequency of low flights appeared to depend upon weather conditions; that within the month prior to the trial he personally observed two jet planes, one at a height of less than 100 feet and the other around 150 to 200 feet; and that as results of operation of aircraft doors are slammed, there are noises as the planes pass over, there is very pronounced vibration, that use of the premises is interfered with, that peaceful enjoyment is destroyed, and that fear attends the use of the premises.

In testimony, the details of which will not be repeated here, he gave it as his opinion that the value of this property before the taking was about $9,500, and after the taking it was about of the value of $2,000.

Ruth Marie Johnson, the other appellee, was called as a witness.  Her testimony as to the effects of the landings and takeoffs through the easement is corroborative of that of her husband in all respects mentioned by him.  She makes it clear that the results do not flow alone from jet planes but other types as well. She gave it as her opinion that the property was worth

$10,000 to $10,500 before the taking and around $2,500 thereafter.

R. Wayne Wilson, a mortgage broker, gave it as his opinion that on property such as this covered by such an easement as the one involved here it would be impossible to obtain a loan.

Ann Godden, a former neighbor, gave it as her opinion that the Johnson property had a value of probably $10,000 before this taking. She testified that she regarded it as of no value after the taking.

The appellant has not by evidence disputed the results which the appellees contend flow from the use of the easement taken. It is pointed out and the matter was dwelt upon at considerable length that another runway was submitted to much greater use, but no valid reason or inference was advanced why this should have the effect of mitigating damage under the circumstances disclosed, if any. The pertinent subject was freedom to use with frequency of use, and not of how frequently on count or by comparison. In other words, the appellant has not disputed the factual consequence of the taking, but only the amount of the damage.

The question of the amount of damages was one for the jury, and the rule is that the determination thereon will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of injury and damage. See, Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N. W. 2d 643; Johnson v. Nathan, 161 Neb. 399, 73 N. W. 2d 398; Smith v. Damato, 172 Neb. 811, 112 N. W. 2d 21.

The verdict in this case bore a reasonable relationship to the injury and damage sustained. In amount it was supported by competent evidence of probative value. There was nothing in the evidence to justify on appeal a conclusion that the verdict was the result of passion and prejudice. The credibility of witnesses was a question determinable by the jury. It cannot be said that the verdict was on its face excessive.

In the light of the record presented the conclusion reached is that the judgment of the district court should be and it is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.

CARTER, J., dissenting.

This is a condemnation proceeding commenced by the Airport Authority of the City of Omaha. The condemner may properly limit the extent of the taking, and the damages to the condemnee are limited to the property or interest in property taken by condemner's petition of taking. The condemner cannot be compelled to take and compensate for anything in excess of the property described in his petition of taking.

The majority opinion holds that the condemner's petition of taking was for two easements described as avigation and flight obstruction easements. Briefly stated, an avigation easement grants the right to fly over an owner's land. A flight obstruction easement is one which increases the margin of safety for flying by assuring that a pilot's vision will not be obscured by natural growth or man-made obstructions above a designated altitude. They are definite and distinct easements. United States v. Brondum, 272 F. 2d 642.

The majority opinion holds that the Airport Authority took both an avigation and a flight obstruction easement. I contend that a flight obstruction easement only was described in the condemner's petition of taking and that condemnee's damages should have been limited by the trial court to the taking of the flight obstruction easement. If my position be the correct one, the trial court was clearly in error in submitting to the jury the question of damages for the taking of an avigation easement.

The applicable portion of the petition of taking states: "That the members of said Airport Authority have determined the necessity of acquiring easements in air spaces above land and the right to prevent height obstructions in the clear-zone areas as established for the

Omaha Municipal Airport in order to provide unobstructed air space for the landing and taking-off of aircraft pursuant to Section 3-204, Revised Statutes of Nebraska, 1943, Reissue of 1954; that it is necessary for petitioner to obtain for the benefit of the public in its use of the Airport, the right to prevent the owners or other parties in interest from hereafter erecting, or permitting the erection or growth, of any structure, tree or other object in the air space over any portion of the property hereinafter described higher than the number of feet hereinafter stated above the present ground level or elevation; said present ground level or elevation being as shown on Exhibit 'A' attached hereto and made a part thereof; that it is further necessary for petitioner to obtain for the benefit of the public in its use of the Airport, the continuing right and easement, from and after the deposit of the condemnation award with the County Judge, to take any action necessary to prevent the erection or growth of any structure, tree or other object into the air space higher than the number of feet hereinafter stated above the present ground level as heretofore defined, and to remove from such air space, or mark or light as obstructions to air navigation, any and all structures, trees or other objects that may at any time project or extend into the air space as heretofore defined, together with the right of ingress to, egress from, and passage over the tracts of property hereinafter described; said tracts being located in Douglas County, Nebraska, to-wit: * * *." The number of feet above present ground level to be included in the easement over condemnee's property is then specifically fixed at 26 feet by the petition for taking.

I point out that the only language that could possibly refer to the taking of an avigation easement are the words "acquiring easements in air spaces above land" appearing in the first sentence of the foregoing paragraph of the petition of taking. The use of the plural refers to the fact that 12 easements in 12 different prop-

erties are sought in this proceeding. There is no mention of the right to fly over land. The quoted portion of the petition of taking recites that the taking is pursuant to section 3-204, R. R. S. 1943, the statute dealing with the taking of flight obstruction easements. The foregoing statute uses very similar language to that contained in the petition of taking, to-wit: "Where necessary, in order to provide unobstructed air space for the landing and taking-off of aircraft utilizing airports or restricted landing areas * * * every municipality is authorized to acquire * * * easements through or other interests in air spaces over land or water, interests in airport hazards outside the boundaries of the airports or restricted landing areas and such other airport protection privileges as are necessary to insure safe approaches to the landing areas of said airports or restricted landing areas and the safe and efficient operation thereof." The language construed by the majority as including an avigation easement is almost identical with the language of section 3-204, R. R. S. 1943, the flight obstruction easement statute. It should be construed in context with the flight obstruction statute and not be given an effect that is not within the meaning used in that statute. Both the avigation and flight obstruction easements are above the surface of the ground and consequently the use of the term "interests in air spaces" is as applicable to one as to the other.

The petition of taking does not even purport to define the limits of a proposed avigation easement. No longitudinal, lateral, or vertical distances are recited. The plat attached describes only a flight obstruction easement and makes no reference whatever to an avigation easement. The allegations of fact pertain only to a flight obstruction easement. The answer filed by condemner in the district court makes this plainer than the original petition of taking. The number of feet above ground level as it relates to the easement taken is definitely fixed at 26 feet. I submit that the description of

the easement taken is insufficient to support the taking and compensating for any easement other than a flight obstruction easement. An avigation easement is not described by words or plat with the certainty required in a condemnation proceeding.

The case is identical with United States v. Brondum, *supra,* wherein the court said: "This appeal turns on the distinction between a clearance or obstruction easement and an avigation or flight easement. These terms are not jargon leading to fruitless semantics; not in condemnation proceedings, anyway. In condemnation proceedings they are useful tags to identify distinctive estates in property. Here, the district judge erred in interpreting a clearance easement as an avigation easement. The district judge's direction of the trial and his charges to the jury were based on the error, and as a consequence the easement granted was not the easement described in the declaration of taking. The cause must be remanded for a new trial. * * * There is no mention (in the declaration of taking) of the right to fly over land. In plain words, the Government seeks to acquire the right to cut trees and natural growth to a prescribed height and to remove man-made obstructions above a prescribed height. The estate therefore is sometimes referred to as 'flight obstruction easement.' * * * The United States Government has complete discretion in determining whether to take a clearance easement or to take an avigation easement, and upon the filing of the declaration of taking and the depositing of the estimated compensation for the taking, here $2,000, the title described in the declaration passed to the Government. The district court lacked jurisdiction to compel the United States to take an avigation easement. * * * But in a condemnation proceeding courts cannot compel the United States to take and pay for an estate not described in the declaration of taking." See, also, United States v. 64.88 Acres of Land, 244 F. 2d

534; United States v. 4.43 Acres of Land, 137 F. Supp. 567.

I submit that the petition for taking is one for the condemnation of a flight obstruction easement only. There is no description of an avigation easement in the petition for taking. There is not one word in the petition for taking referring to the flight of aircraft over condemnee's land. I submit that the opinion of the majority compels the Airport Authority to take and pay for an avigation easement that it did not want, that it did not ask for, and one it made no attempt to describe in its petition of taking. To impose liability for an avigation easement upon a public authority under the circumstances shown is, in my opinion, violative of the fundamental rules governing the taking of private property for a public purpose.

I do not imply that the condemnee does not have a cause of action if his property has been damaged by continuous, low-flying airplanes. See, United States v. Causby, 328 U. S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206; Griggs v. County of Allegheny, 369 U. S. 84, 82 S. Ct. 531, 7 L. Ed. 2d 585. I submit, however, that the damages for which recovery may be had in the instant case are those resulting from the specific property taken in this condemnation proceeding. A condemnee cannot properly inject a claim for damages for some other taking or damaging into a condemnation proceeding for the taking of a separate and distinct property or property interest.

In my opinion the trial court erred in interpreting the taking of a flight obstruction easement as including an avigation easement. The majority opinion arrives at the same incorrect conclusion. I would reverse the judgment of the district court, with instructions to submit to the jury the question of damages for the taking of a flight obstruction easement only.

I am authorized to state that Spencer and Boslaugh, JJ., concur in this dissent.