### UNITED STATES of America, Appellant,

### v.

### 3,218.9 ACRES OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF WARREN, STATE OF PENNSYLVANIA and Taxasgulf, Inc. et al.

### No. 79–2122.

United States Court of Appeals, Third Circuit.

Argued Feb. 20, 1980.

Decided April 23, 1980.

---

James W. Moorman, Asst. Atty. Gen., Washington, D. C., Robert J. Cindrich, U. S. Atty., Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., Dirk D. Snel, Carl Strass (argued), Attys., Dept. of Justice, Washington, D. C., for appellant.

Joseph J. Malizia (argued), Emporium, Pa., for appellees.

Before SEITZ, Chief Judge, ROSENN, Circuit Judge, and SHAPIRO, District Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal asks us to determine whether a government condemnation of a surface tract of land constituted a taking of the subsurface mineral estates so as to entitle the subsurface owners to monetary compensation. The trial court submitted the issue to a jury which awarded damages to the subsurface owners. We conclude it was error to allow the jury to determine the damages to the subsurface estates under the terms of the declaration of taking and reverse that portion of the district court's judgment.

### I.

The United States acquired certain lands for the Allegheny National Forest in Warren County, Pennsylvania by condemnation. The federal interest in acquiring the land as stated in the declaration of taking is to promote and protect the navigation of streams, production of timber, and development and management of adequate outdoor recreation resources in connection with the Allegheny Reservoir Project. The land which is the subject of this dispute was not held in fee by any one owner. In addition to the surface landowners, there were several owners of subsurface mineral interests, ·

* Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

most importantly oil and gas. Some of the subsurface mineral owners also had interests in the surface. Included among the subsurface owners are the defendants in this case.[1] There is no issue as to the Government's statutory authority to take the land; the question is whether the taking of the surface, reserving a right of access for mining the subsurface limited by government regulations, constitutes a taking of the subsurface mineral interests and therefore entitles owners of such interests to compensation.

The Government's declaration of taking and its complaint exempt from the condemnation any interest in coal, oil, gas or other minerals which are held by parties who have no other connected interest in the land other than a record title to coal, oil, gas, or other minerals. Individuals with any interest in coal, gas, or other minerals who also owned any additional interest in the fee were left with their mineral interests, subject, however, to the constraint that their right to enter upon the land to mine conform to the rules and regulations of the Secretary of Agriculture governing mining in the National Forest. The crucial portion of the declaration of taking provides:

> *Tract 961*: The estate to be taken is the fee simple title, subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipelines; the reservation in the owners thereof, their successors or assigns of all coal, oil, gas and other minerals not outstanding of record in third parties together with the right to enter upon the land and prospect for, mine, and remove the same in accordance with the rules and

regulations of the Secretary of Agriculture dated April 30, 1963, a copy of which is attached hereto as Schedule C; and the exception of all coal, oil, gas, and minerals outstanding of record in third parties.

The effect of the declaration of taking is to exempt from the condemnation all record title to subsurface minerals.

The known owners of any interests in the fee surface were duly served with notice of condemnation, including those with both mineral and surface interests. The record owners who held only mineral interests were not served.[2] However, the owners of only the mineral interests appeared and asserted that they were entitled to compensation because the taking of the surface estate and the imposition of the Secretary's mining rules on surface owners amounted in effect to a taking of their subsurface oil and gas interests.

The United States filed a motion entitled: "Plaintiff's Motion for Determination By the Court of the Estate Taken and To Dismiss Certain Defendants as Unnecessarily Joined." The Government claimed the interests of the mineral owners were exempt from the taking by the specific terms of the declaration. The district court concluded that the language of the declaration of taking was unclear and conducted a hearing as to the effect of the Secretary's rules on the subsurface interests. After the hearing, the court stated that subsurface rights were affected and submitted the issue of damages to the jury. By special verdict, the jury awarded $321,355 for the surface lands[3] and $485,812 as compensation for the taking of the subsurface interests. The Government, in these condemnation pro-

---

1. The dispute in this case involves 479.30 acres of land known as Tract 961. The Ross Heirs own the entire surface of Tract 961 and the complete oil and gas rights to 5.42 acres. The Government admits liability for the surface of Tract 961 and the attached 5.42 acre mineral interest. The David Oil Company owns seven-eighths and Ross Heirs one-eighth of the oil and gas rights on 419.11 acres while the Estate of L. M. Lilly owns the complete oil and gas rights on 54.77 acres. David Oil, the Estate of Lilly and the Ross Heirs all claim compensation for their mineral interests.

2. The L. M. Lilly Estate, the David Oil Company, and the Sheaffer Estate were not served with the declaration of taking on Tract 961. However, upon learning of the condemnation proceedings, they promptly entered an appearance claiming a right to compensation for their interests in Tract 961.

3. The jury awarded the Ross Heirs $315,920 for their surface interest in Tract 961 and $5,435 for their attached oil and gas interests on 5.42 acres.

ceedings, appeals the award for the subsurface interests on the ground that the question of damages should not have been presented to the jury because there was not a taking of the subsurface estates.

## II.

Pennsylvania law recognizes that there may be three separate estates in land: the surface, the right of support, and the subsurface mineral rights. *Pennsylvania Bank and Trust Co., Youngsville Branch v. Dickey*, 232 Pa.Super. 224, 335 A.2d 483, 485 (1975); *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227 (1943). There may be situations where interests in a piece of land may be severed and owned by different persons. In *Duquesne Natural Gas Co. v. Fefolt*, 203 Pa.Super. 102, 198 A.2d 608, 610 (1964), the Superior Court, quoting from the lower court, stated:

> The right of property in natural gas and oil ordinarily belongs to the owner of the land. The oil and gas are a part of the land so long as they are on it or in it or are subject to control therein. In other words, they are part of the land while they are in place. *They can be severed from ownership of the surface by grant or exception as separate corporeal rights.* Accordingly, they may be the subject of a sale, separate and apart from the surface and from any minerals beneath it; they belong to the owner in fee, or his grantee, as long as they remain part of his property, although use of them is not possible until they are severed from the freehold exactly as done in the case of all other minerals beneath the surface. Hence, a freehold of inheritance may be created in oil and gas.

(Emphasis added; citation omitted).

In this case the interests of the mineral holders had been severed from the surface fee *prior* to the plaintiff's declaration of taking.[4] As to these properties, the declaration sought only to condemn the surface estate, with the reservation to the owners of the right to mine, subject however to the

imposition of the Secretary of Agriculture's rules on future drilling on the surface estate. The parties holding only subsurface estates retained the same conditions and rights after the taking as they possessed previously.

The district court apparently found the imposition of the Secretary's Rules on the use of the surface to be a sufficient taking of the third party subsurface estate to require compensation. We believe this analysis is faulty for two reasons. First, the terms of the declaration of taking specifically provide for "the exception of all coal, oil, gas, and minerals outstanding of record in third parties." The district court characterized this language as ambiguous. The defendants in this case do not suggest any reading of this language which casts doubt on its meaning. The language excepting the minerals is clear that third party mineral rights are not intended to be affected by the declaration. In view of this explicit limitation of the nature of the estate to be taken, the district court was without power to enlarge the terms of the taking. *United States v. 64.88 Acres in Allegheny County, Pennsylvania*, 244 F.2d 534, 536 (3d Cir. 1957).

Second, the possibility that in the future the Secretary's Rules may inhibit the defendants in the removal of the minerals does not provide a current basis for damages. The district court apparently believed that there was a taking of the subsurface estate because the Secretary's regulations of the surface use would greatly diminish the value of the drilling rights. We have held, however, that a possible future taking of property does not give rise to a present cause of action for damages.

In *64.88 Acres in Allegheny County, supra*, the United States Department of the Air Force acquired a clearance easement of private land adjoining an airport. The easement allowed the Government to control all obstructions, natural or artificial, including the natural earth forming hill-

---

4. At oral argument the Government indicated that the fee simple had been severed into sur-

face and subsurface interests in the 1930's or earlier.

tops, so as to leave an unobstructed, spatial, trapezoidal plane across and over the condemnee's land. The condemnee argued that the Government may be taking, or as a result of its taking will claim a right to fly aircraft over his land. This court held:

It is well established that, absent bad faith which is not argued here, the government's determination and explicit assertion of the nature and extent of the estate to be taken are not judicially reviewable. If any subsequent low flying of aircraft over appellee's land should occur and should be said to invade property rights, the acquisition of the right to keep that space clear will not have conferred any attendant right to fly through it. As another court has aptly said in a similar situation:

" * * * since the Government has not acquired a right to fly aircraft over the condemnees' land by these proceedings, it follows that, if the Government does cause its aircraft to make flights over the lands of these defendants, or has already done so, at such elevation and with such frequency as to result in taking beyond that described in the Declaration of Taking on file in these cases, or in actual physical damages, the *landowners would have a right to bring suit against the Government for damages or just compensation.*"

*Id.* at 536. (Citations omitted.) Thus, the cause of action for potential consequential damages to the subsurface estate accrues, not at the time of the taking of the surface, but if and when the damage occurs to the subsurface estate.

The defendants attempt to obtain judicial review of this condemnation award by claiming that the Secretary of Agriculture exercised "bad faith." The "bad faith" allegedly is evidenced because the Secretary declined to clarify the language in the declaration of taking. However, the "bad faith" discussed in *64.88 Acres in Allegheny County* does not refer to the failure to clarify the declaration. Rather, we believe "bad faith" in this context is an attempt to secure a greater property interest than that specified in the declaration of taking, without just compensation. In this case, the Government has unequivocally expressed its intention not to take the oil, gas, and other mineral interests and it has no reason for seeking them. The purpose in taking the surface lands pertains to their use for timber land and not for mining. In any event, assuming *arguendo* some substance to the defendants' charge of "bad faith," the record shows that the Government offered at interrogatories to clarify the declaration of taking but that offer was declined by the defendants.

■ It appears that the remedy for the defendants is to bring suit in the Court of Claims if in fact the Government attempts to so restrict the use of their estates as to cause them damages or, if it amounts to a taking, bring suit in the appropriate court. The rationale for this limitation is that under sovereign immunity the Government can only be sued by consent and to allow the district court to enlarge the scope of the condemnation award would be to abrogate sovereign immunity. In *United States v. 3,317.39 Acres of Land, More or Less, in Jefferson County, Arkansas*, 443 F.2d 104, 106 (8th Cir. 1971), the court said:

The United States, as sovereign, is immune from suit, except when it consents to be sued, and the terms of its consent to be sued in any court defines that court's jurisdiction to entertain the suit. The terms of the Government's consent to be sued in the facts of the instant case are defined by the Tucker Act, 28 U.S.C. § 1491.

The landowner is entitled to recover damages for the actual taking of property which is not included in the declaration of taking, but the award may not be made in a condemnation suit under the theory of damages to the remainder. This must be done in a separate proceeding under the Tucker Act in the Court of Claims, (28 U.S.C. § 1491), [or in the district court if less than $10,000 is involved, 28 U.S.C. § 1346(a)(2)].

(Citations omitted.) *See also United States v. 21.54 Acres in Marshall County, W. Va.,* 491 F.2d 301, 304 (4th Cir. 1973).

### III.

We conclude that it was error for the district court to permit the jury to consider damages to the subsurface estates. The case will be remanded to the district court with instructions to vacate the $485,912 award in favor of the owners of the subsurface estates.

Costs taxed against the defendant-appellees.