WILLIS I. HOOPES, ADMINISTRATOR, APPELLEE, v. JOHN D. CREIGHTON, APPELLANT.

FILED DECEMBER 9, 1916.   No. 18737.

1. Negligence: ACTIONS: VIOLATION OF STATUTE.   The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is sufficient to prove such a breach of duty as will sustain a private action for negligence, if the other elements of actionable negligence concur.   Omaha Street R. Co. v. Duvall, 40 Neb. 29.

2. Innkeepers: DUTIES TO GUESTS: FIRE ESCAPES.   A hotel owner may not omit to do the things that are reasonably necessary for the safety and protection of the guests of the house, and if he disregards the provisions of the law concerning the establishment of fire-escapes upon the building, and such other devices as the law provides for, he will be held liable for the damages sustained because of the death of any guest which may be brought about by his negligence.

3. Negligence: ACTIONS: VIOLATION OF STATUTE.   The fact that the statute or ordinance in question does not in terms impose a civil liability for its violation does not affect such evidence of its violation as may go to show negligence.

4. Innkeepers: ACTION FOR NEGLIGENCE: TRIAL: INSTRUCTIONS.   A requested instruction of the defendant, to the effect that the plaintiff's decedent assumed the risk of injury because he knew the dangerous condition of the building as regards injury by fire, was properly refused.

Hoopes v. Creighton.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Mahoney & Kennedy* and *Yale C. Holland,* for appellant.

*Brown, Baxter & Van Dusen* and *Gurley & Fitch, contra.*

HAMER, J.

Appeal from the judgment of the district court for Douglas county. Willis I. Hoopes, as administrator of the estate of Renfree H. Rickard, brought an action against John D. Creighton to recover damages because of the alleged negligence of said Creighton in maintaining a hotel in the city of Omaha, known as the "Dewey Hotel," and in which he failed to furnish fire-escapes for the said building as prescribed by the statute of the state of Nebraska. The plaintiff recovered a judgment for the sum of $6,000.

The plaintiff alleged that Renfree H. Rickard died at Omaha, Nebraska, February 28, 1913, leaving as his next of kin his widow, Clara Rickard, and his father, Peter H. Rickard; that John D. Creighton was the owner of the Dewey Hotel, the same being used by and held out to the public as a hotel and public lodging place; that said building was maintained without having one or more fireproof stairways; that the defendant negligently failed to provide any fire-escapes to which convenient access could be had from the interior of said building on the second floor, and with only one insufficient fire-escape stairway and platform on the north side, and one standpipe and ladder on the east side, neither of which was of convenient access from the interior of the building; that the way of egress to such fire-escapes was at all times obstructed by solid doors of wood with locks and bolts attached thereto, and maintained between the only fire-escapes on the second floor; that the defendant failed to equip any outside rooms with automatic fire-escapes or device so as to

offer the means of escape to the occupants who might be unable to reach such defective fire-escapes as were maintained; that the defendant, shortly before the fire, was notified by the deputy labor commissioner to provide fire protection and to remedy the said defects as required by law; that on February 28, 1913, said Rickard, as a guest of the said hotel, was assigned to room No. 34, an outside room that was not equipped with a fire-escape ladder or other device for the safety of the guests, and that said Rickard did not know the condition of the premises and the lack of proper fire-escapes; that shortly after said Rickard retired a fire broke out in the said hotel, and solely by reason of the failure of defendant to provide fire-escapes said Rickard lost his life; that said Rickard at the time of his death was a strong, well-educated man, 37 years old, operating as a brand inspector and a trainer and trader of horses at the South Omaha stock-yards, earning more than $5,000 a year, and contributing large sums of money to his father, as well as supporting his home for his wife and himself.

The defendant admitted that he was the owner of the said Dewey Hotel building, and denied the other averments of plaintiff's petition. He alleged that whatever injuries plaintiff's decedent had received were occasioned solely through the failure and negligence of said defendant, who was familiar with the conditions and surroundings of said hotel building and assumed whatever risk there was; that the premises were purchased by the defendant February 6, 1907, subject to a lease made to one Charles E. Wilkins, and were then and at all times subsequent thereto equipped with fire-escapes adequate and sufficient in number and design, and with a free and unobstructed access thereto from all parts of said building, and that said fire-escapes and the means of access thereto were then, and at all times subsequent, maintained as required by law; that the lessee had complete possession of the premises at the time of the fire, and that the defendant had no control over the said building and took no part

in its use and management.    The reply was a general denial.

The evidence sustains the allegations of the petition and supports the verdict.    It was in testimony by the night clerk, Nold, that on the night of the fire the door leading to the fire-escape on the second floor opened into a guest room, No. 30.    This is also shown by the plan of the second story contained in the record.    The fire-escape at the north end of the building, such as it was, could be reached from room No. 40 through the window furthest west.    Room No. 40 was a guest room and had a door leading into it from a corridor which extended the length of the building.    A person could go from this corridor through and into this guest room and then through a window to the fire-escape at the northeast corner of the building.    This fire-escape would permit him to reach a ladder, which, when unhooked from the wall where it usually hung, extended a short distance below the floor of the second story.    It was not unhooked the night of the fire, and the occupants of room No. 40, Clara Newman and Iona Jennings, went down the fireman's ladder.    The photograph of the north end of the building shows that this fire-escape could be reached from the second window from Thirteenth street and "from the ledge along the front of the building under the window."    The "ledge" or "cornice" referred to on the north end of the structure was practically on a level with the second floor.    The north fire-escape went clear up onto the roof.    Access to the north fire-escape could be had from the second story by going through the window at the north end of the corridor and then crawling along on the "cornice" or "ledge" toward the northeast corner of the building until it was reached.    Of course, an athlete might have walked along on this ledge.    No one seems to have escaped from the second story by means of these fire-escapes.    There was a ladder on the east side which did not extend very far toward the ground.    It could be reached from the second floor through room No. 30.

100  Neb.—33

Nold testified that every room on the second floor was provided with a lock and key, and that each guest assigned to a room on that floor was provided with a key. The testimony of Nold is corroborated by the testimony of Garrett F. Vliet, who was also one of the clerks of the hotel. Vliet testified that room No. 34 was occupied by Rickard, the decedent, and the woman whom he registered as his wife. He also testified that rooms numbered 20, 28 and 32 of the second floor were not occupied that night, and that No. 30 was occupied by a Charles Cummings. His testimony corroborated that of Nold concerning the fact that Iona Jennings and Clara Newman occupied room No. 40. He testified that Rickard was under the influence of liquor when he and the woman came in; that it was about 3 o'clock in the morning when they came; that the woman appeared to be intoxicated; that Rickard was able to walk, and that he did not stagger noticeably; that the witness assigned him to room No. 34, the fourth room from the north on the east side of the hallway, on the second floor; that this was the last time the witness saw him alive; that none of the outside rooms was equipped with an automatic fire-escape; that after calling the fire department the witness called Mrs. Wilkins and her sister; that the witness met Mr. Nold before he got out of the building, and that Nold had apparently been crawling; that the witness met him about one-third of the way up from the vestibule to the office.

The defendant, John D. Creighton, testified that at the time he bought the building the fire-escapes were there which we have described; that the fire-escape on the north end was a regular iron fire-escape, the steps being of cast iron and 5 inches wide and 27 or 28 inches long; that when he put in a new front he was given permission to come out with the "cornice" or "ledge;" that this "ledge" was 26 inches wide by 44 feet long, and was at the level of the second floor; that it was made of wood and covered with tin; that it ran clear across the width of the hotel; he also described the fire-escape at room No. 40 on the north

end of the building and also the ladder fire-escape on the east side at room No. 30. The testimony concerning the fire-escapes, such as they were, is corroborated by the testimony of other witnesses. Alexander Beck testified that the platform on the second floor, being the one at room No. 40, could be reached by going out through the hall window and walking along the "ledge."

C. S. Ely testified that the door from room 34, the one occupied by Rickard, opened into the corridor, and that there was a chance to go through the window at the north end of the corridor onto this "ledge," or that one could go south along the corridor and then go down the winding stairway which led from the office to the entrance on Thirteenth street, or that one could come out of the room No. 34 into the corridor, and then go south to room No. 30, and then go, if possible, down the ladder fire-escape which might be reached from that room.

Baker Cole testified that he was a city fireman at the time of the Dewey Hotel fire; that his company, Hook & Ladder No. 1, was one of the first on the ground; that the company got there about 4:48 a. m.; that the witness was acquainted with Rickard; that the witness went into the Thirteenth street entrance; that the building was very smoky at that time; that Rickard was the first man that the witness got hold of, and that he dragged him out and called for help; that he was then alive; that he was inside the door when the witness found him, but "plumb" down the stairway; that it was absolutely dark in there in the entrance-way when the witness found Rickard; that the witness and others took Rickard to a restaurant.

Martin Dinenn testified that the first alarm came at 4:44 a. m.; that the second alarm came at 4:47, and the third alarm at 4:52; that this last alarm was turned in immediately after the second explosion; that the witness got there about 4:51 and was on the ground floor when the second explosion occurred; that he saw a ladder going up to the second floor, and that he went up on that ladder

and into a bedroom, and then out into the hall; that about that time the explosion came and he got out as fast as he could; that after the witness was dragged out from upstairs he met some firemen on the sidewalk, and they said somebody was inside the entrance; that the witness went into the doorway of the entrance and found the Lee woman on the floor; that she was then alive, and the witness called for help, and they pulled her out and took her to a restaurant. The woman described by the witness was the woman who occupied room 34 with Rickard. Both appear to have died.

. F. E. Hodges, called as a witness for the defendant, testified that he was night manager of the Calumet restaurant; that he waited on Rickard the night of the fire between 2 and 3 o'clock in the morning; that he had a woman with him; that he staggered; that the woman was probably intoxicated, but that Rickard was well able to handle himself, although he staggered some both going out and coming in.

No fire-escape constructed for the second floor was made in compliance with the statute. No fire-escape was built on a level with the floor of the second story "and of sufficient length to permit access to the same from not less than two windows," nor were they "so constructed as to be of convenient access from the interior of the building," nor were they "commodious in size and form and of sufficient strength to be safe for the purpose of ascent and descent," all as provided by the statute, nor did any outside room of said hotel contain an automatic fire-escape or other proper and sufficient device to escape from a fire. The provision of the statute (Laws 1911, ch. 56, sec. 1) "that in every hotel, boarding, lodging, tenement, or apartment house, there shall also be provided one automatic metallic fire-escape, or other proper device, in every outside room of such hotel, boarding, lodging, tenement or apartment house, each automatic metallic fire-escape or device to be attached to the inside of said rooms so as to afford an effective means of escape to all occupants who,

for any reason, are unable to reach or use the said fire-proof stairways, chutes, or toboggans," was entirely disregarded. The law also provides: "The way of egress to such fire-escapes shall, at all times, be kept free and clear of all obstructions of any and every nature." Laws 1911, ch. 64, sec. 14.

The appellant complains that the court erred in giving instruction No. 3 to the jury. That instruction simply states the law as it is contained in the Laws of 1911 above cited. If the law is wrong and without foundation, then the instruction is wrong. The first part of the instruction provides for the building of fire-proof stairways, chutes or toboggans, and steel platforms and automatic metallic fire-escapes. The second provision, to the effect that "the way of egress to such fire-escapes shall, at all times, be kept free and clear of all obstructions of any and every nature," is contained in the section last above referred to. The law is contained in two provisions of the statute. After a careful examination of appellant's brief, we are unable to discover anything wrong with the third instruction given by the court upon its own motion. We do not copy it for the reason that it is itself a copy of the law.

The Reagan act seems to be a complete law touching the matters within it. It contemplates protection against fire. It is made to apply to hotels, boarding houses, store houses, tenement houses, and every building used in whole or in part as a public building, or used as an office or store building or schoolhouse or theatre or public hall or place of assemblage. We see no constitutional inhibition against the passage of the act. There is a provision looking to the inspection of any building in the state where it is claimed that the provisions of the act are violated. The inspection is to be by the commissioner of labor, the deputy commissioner of labor, or such other person as may be appointed by the deputy commissioner of labor. There is also a provision touching the payment of compensation for services. The act winds up by certain provisions with respect to the punishment of those who violate it, and it

is made the duty of the county attorney to prosecute the
persons who violate the law before any court of compe-
tent jurisdiction. The act was no doubt intended to pro-
vide whatever might be necessary. The act introduced by
Mr. Bulla looks to the creation of a hotel commission,
and then there are certain regulations concerning the
lighting and plumbing and water closets, and then
the pillow slips and sheets and bedding and the
wash room and towels, and in section 14 there is
the provision that within six months after the pas-
sage of the act every hotel in the state more than two
stories high shall be equipped with an iron fire-escape on
the outside of the building. These provisions, which may
not be more specifically set forth because of unduly ex-
tending this opinion, are in no way in conflict with the
Reagan act. It seems to look toward the enforcement of
the provisions contained in the Reagan act, together with
certain additional duties that are imposed upon the hotel-
keeper. In the Reagan act the provisions are intended to
apply to a large class of buildings, not hotels alone, but
seven or eight other different classes of buildings. It is
said that the Reagan act is void for the reason that it
undertook to prescribe fire-escapes for hotels. We are
unable to see any good reason why the Reagan act is void.
Many authorities are cited, but they do not seem to con-
tain the reason contended for.

In *Board of Education v. Moses,* 51 Neb. 288, which is
cited by counsel for appellant, it was held: "An act of the
legislature which is clearly amendatory of an existing
statute is unconstitutional when such amendatory act
in no way mentions or describes that of which it is
amendatory." The purpose of the act was to make the
public high schools of the state open to attendance of
any person of school age residing outside the district,
being a resident of the state, and whose education
cannot profitably be carried further in the public
school of the district of his residence. It was held
that the fundamental law of the state required all

the parts of an amended law to be incorporated into the act, and the old law so amended to be repealed. We are unable to see any similarity between the case cited and the instant case.

In the case of *State v. Majors,* 85 Neb. 375, it was held that an amendment by implication repealed section 22, subd. XIII, ch. 79, Comp. St. 1907, and that it did not contain the section as amended, or purport to repeal the same. This would be a very different case from the one under consideration. Here is a complete act, if we understand it aright, and it stands on its own legs without being an attachment to anything.

In *Minier v. Burt County,* 95 Neb. 473, it was said in the syllabus: "An act of the legislature, which is complete in itself, does not violate section 11, art. III, of the Constitution, which provides: 'No law shall be amended unless the new act contained the section or sections so amended and the section or sections so amended shall be repealed.'" In that case, however, it was held that the amendment did not contain the section or sections amended, nor repeal them.

In *Stewart v. Barton,* 91 Neb. 96, it is said in paragraph 2 of the syllabus: "Where an act is passed as original and independent legislation and is complete in itself so far as applies to the subject-matter properly embraced within its title, the constitutional provision respecting the manner of amendment and repeal of former statutes has no application." That was a case where the legislature provided for the construction and equipment of a laboratory on the campus of the medical college of the university of Nebraska at Omaha under the supervision of the board of regents. Laws 1911, ch. 205. There was an effort to defeat the act. It is said in the body of the opinion: "We think it cannot with reason be contended that the legislature has not the authority to enlarge by a separate and subsequent act the powers and duties of any officer of its own creation, nor that it cannot widen or relax by later enactments any building limitations it may have estab-

lished. The provisions of the general act limiting the powers of the regents with regard to the erection of other university buildings was not interfered with by the new act, but it conferred additional powers and prescribed a different location for another building; while, in some sense, supplemental to the former act, it leaves its general provisions untouched and therefore is not amendatory in the proper sense. * . * * Where an act is complete within itself, it may be valid even though in conflict with a prior law not referred to in the later act"—citing *State v. Cornell,* 50 Neb. 526; *Affholder v. State,* 51 Neb. 91; *Zimmerman v. Trude,* 80 Neb. 503; *Allan v. Kennard,* 81 Neb. 289; *State v. Ure,* 91 Neb. 31.

The second reason given why there should be a reversal of the judgment is that the Reagan act is not germane to the chapter and section which it purports to amend and repeal. The section referred to provides with respect to the commissioner or his deputy that either shall have a right to enter any factory or workshop in which labor is employed for the purpose of gathering facts and statistics, or examining the means of escape from fire, and the provisions for the health and safety of operatives. As we have said before, this Reagan act is not intended as an attachment to any other provision; it purports to be, and is, of and in itself, a complete act. We have examined some of the cases cited in support of the contention made. Among others is *Armstrong v. Mayer,* 60 Neb. 423. In that case this court held that the supreme court had jurisdiction to review by proceeding in error a judgment rendered by the district court without jurisdiction of the subject-matter. We are unable to see the force of counsel's contention.

In *Strahl v. Miller,* 97 Neb. 820, this court said, in an action for damages against a hotel keeper: "This (provision of the law of 1883) is sufficient to attach a civil liability to the innkeeper for negligence in not properly safeguarding his guest."

In *Rose v. King*, 49 Ohio St. 213, the court said: "Such liability followed as a consequence of the terms of the original act in which the language above quoted does not appear, but which enjoined the duty, and resulted from the principle, which we supposed to be of universal application, that where a statute imposes a duty but gives no penalty to the party aggrieved by its nonperformance, that party is entitled on common law principles, to maintain an action for his damages." In support of the position stated, the Ohio court quotes from Wharton, Law of Negligence, sec. 443, and many other authorities.

In *Yall v. Snow*, 201 Mo. 511, there was an action for damages for neglect of the owner to provide fire-escapes in accordance with the statute. The court held that there was a right of action for death of the guest in the hotel building not equipped with fire-escapes in accordance with the statute. In this case the defense was that the building then used for a hotel, was not constructed for a hotel, and therefore that the owner was relieved from the duty of placing fire-escapes on the building. It was held that the defense could not be maintained, and that it was the duty of the owner, if he leased the building for hotel purposes, to put the fire-escapes on.

The third proposition contended for by the appellant is that the judgment should be reversed because of the misconduct of counsel. We may say that there are a good many cases on this subject, and several of them are cited. As we look at the matter, much of the trial consisted of a battle of words. Upon the part of the plaintiff it was contended that the Dewey Hotel was kept in order that the defendant might make money out of prostitutes who used the hotel for the accommodation of themselves and their male companions. On the other hand, it was contended by counsel for the defendant that the decedent himself was living with a prostitute, and therefore that the case was not a proper one in which to give the plaintiff damages. We think that it was about an even case of mud throwing, probably found by both parties to be necessary

because of the exigencies under consideration. We do not indorse this manner of trying the case, and it is certainly open to censure; but, where both parties use the same sort of weapons, we do not feel like setting the judgment aside. Each appears to have shown unusual skill in this line of argument; but, after all, as one of the counsel expressed it in the brief, it is a case of the pot calling the kettle black. The affidavit of defendant's counsel touching the misconduct of plaintiff's counsel was made on memory, and there was no stenographic report of what was said. This makes an uncertain element in the case. In the *City of Lexington v. Kreitz,* 73 Neb. 770, it was held that there was no probability that the language used by plaintiff's counsel in any manner influenced the verdict. In this case the decedent was shown to be a man of large earning capacity. He was a brand inspector for the state of Montana and received a regular salary of $1,800 a year. He was also a horse trainer and trader on the South Omaha market. He left a widow and a father surviving him. The judgment was only for $6,000. The remarks of Mr. Woodrough do not seem to have done the defendant an injustice, so far as the verdict and judgment are concerned. The jury could not have been carried away by passion or prejudice.

The building was not equipped with fire-escapes as required by the statute. The evidence clearly shows that this neglect was the proximate cause of Rickard's death, and the defendant is liable in damages. There was no access from either of the hall windows of the second floor to any fire-escape. There was a door to be broken through in order to reach the window and fire-escape in room No. 34. They were shut in. Apparently they had opened the door into the hall and struggled to go to the bottom of the entrance on Thirteenth street. On their way there they were overcome by smoke, and gas, and heat, and they died because of it. Four persons besides Rickard lost their lives in this fire. The evidence shows that the owner of the building had been notified, and he must have been

aware of the fact.   He took the risk by neglecting to equip
the second story as the law provides.

The requested instruction of the defendant, to the effect
that Rickard assumed the risk because he knew the dan-
gerous condition of the building, was properly refused.
Rickard did not assume the risk because he stopped at
the hotel.   We are cited to *Armaindo v. Ferguson*, 55 N.
Y. Supp. 769, where it is said: "By staying at a hotel for
six months, paying weekly rent, without objecting to a
failure to provide the room with a rope or other appli-
ance for escaping in case of fire, a guest waives the provi-
sions of section 40, ch. 376, Laws 1896 (Domestic Com-
merce Law), requiring the hotel-keepers to provide each
lodging room with a rope or other appliance   sufficient   to
enable the guest to escape in case of fire."   In that case there
were, it is said, fire-escapes, "and the platform to one of
them was directly under one of the windows opening out
of the plaintiff's room."   The plaintiff seems to have kept
her window nailed down to prevent unbidden persons
from entering her room.   She could have opened the win-
dow and could have gone down the fire-escape.   The man
who occupied the room with her escaped from the burn-
ing building by means of this fire-escape.   The woman
failed to use it, through fear or confusion, and jumped
to the ground.   As there was ample means of escape the
proprietor of the building was not held liable.

We are also cited to *Huda v. American Glucose Co.*,
154 N. Y. 474.   In that case there were fire-escapes con-
structed on the outside of the building.   There was a pro-
vision in the law that the fire-escapes should have land-
ings "embracing at least two windows at each story
and connecting with the interior by easily accessible
and unobstructed openings."   The building was a factory.
The court tells in the opinion that, to conduct the business
of the factory, the manufacture of glucose, it is necessary
to keep the windows nailed close and to maintain an even
temperature.   The windows were screwed down.   The
court seems to have taken the view that as the windows

were slight they could have been easily broken, and that when the fire broke out it was the duty of the employees, if they wished to save themselves, to smash the windows and get out on the fire-escapes.

In *Willy v. Mulledy*, 78 N. Y. 310, the court said: "It was the intention of the statute that they (the tenants) should have two means of escape in case of fire, one by the scuttle (through the roof), and another by the fire-escape. It was the duty of the defendant to provide a ladder, and then to use reasonable care to keep it there in·readiness for use." The court held that it was the duty of the proprietor to keep a ladder so that the tenants might reach the scuttle, and that it was his duty to build and maintain a fire-escape. He was held liable for the death of the plaintiff's wife and child.

In *Cittadino v. Schackter*, 83 N. J. Law, 593, the plaintiff, a widow, was tenant of the top floor of an apartment house for more than a year at the time of its partial destruction by fire. She endeavored to escape and was injured. It was held: "Even though the plaintiff had discovered that the landlord failed to perform his statutory duty, she might reasonably assume that he would perform that duty at any time and not continue to disregard the law."

·Aldermen cannot dispense with a requirement for fire-escapes on a factory building. *Maiorca v. Myers*, 115 N. Y. Supp. 923. Such fire-escapes as may be deemed necessary by the fire inspector shall be provided on the outside of every factory three or more stories high. *Arnold v. National Starch Co.*, 194 N. Y. 42.

In *McLaughlin v. Armfield*, 58 Hun (N. Y.) 376, the court had before it for construction section 16, tit. 14, ch. 583 of the Laws of New York, 1888, which directed that certain buildings "shall be provided with such fire-escapes and doors as shall be directed and approved by the commissioner." Held: "The duty rests upon the owner to bring the subject before the commissioner and obtain his direction in the premises; and, where an accident

occurs because of the absence of such fire-escapes from the building, the owner cannot avoid responsibility by alleging that the statute does not declare absolutely that fire-escapes shall be erected by the owner."

When the legislature of Nebrska passed the acts referred to concerning fire-escapes, it was apparently determined that they should be put upon the kind of buildings named, and with a view of saving human life. There appear to be three expressions of the legislature touching the same subject-matter, the preservation of life by the use of fire-escapes. So far as the same can be done, the legislature of Nebraska has declared its wishes in the matter. The courts are not called upon to disregard the expressions of the legislature, when they have been frequently repeated, and all the time along the same line.

The judgment of the district court is

AFFIRMED,

MORRISSEY, C. J., and SEDGWICK, J., dissent.