SANDRA J. BAILEY, APPELLEE AND CROSS-APPELLANT, V. AMISUB
(SAINT JOSEPH HOSPITAL), INC., DOING BUSINESS AS ST. JOSEPH
HOSPITAL, AND SUSAN WHITE, APPELLANTS AND
CROSS-APPELLEES.

489 N.W.2d 323

Filed April 14, 1992.    No. A-89-1360.

Neil B. Danberg, Jr., and Patrick G. Vipond, of Kennedy, Holland, DeLacy & Svoboda, for appellants.

John F. Thomas, of McGrath, North, Mullin & Kratz, P.C., for appellee.

CONNOLLY, HANNON, and IRWIN, Judges.

CONNOLLY, Judge.

Defendants, AMISUB (Saint Joseph Hospital), Inc. (AMISUB), and Susan White, appeal a jury verdict of $120,000 entered in favor of the plaintiff, Sandra J. Bailey, for injuries sustained as a result of defendants' negligence. Bailey cross-appeals the verdict. We affirm.

This case arises as a result of injuries sustained by Bailey, a student nurse anesthetist, while assisting in the moving of a patient's bed from an operating room in a hospital operated by AMISUB.

## I. FACTUAL BACKGROUND

Bailey's initial injury occurred on June 8, 1985. Bailey was a student in Creighton University's C.R.N.A. (nurse anesthetist) program. As part of her clinical coursework, Bailey was required to attend patients in the operating rooms of St. Joseph Hospital, a facility operated by AMISUB.

Bailey was one of the attendants guiding a heart patient's bed out of operating room No. 1. Jeanne Howard, a nurse anesthetist who was also attending the patient, testified at trial that the patient's bed had been pushed into the corridor, so that it was perpendicular to the wall opposite the door of operating room No. 1. Bailey, along with Howard, was at the head of the bed near the wall. Defendant White, an employee of AMISUB, was at the foot of the bed in the doorway.

When the accident occurred, the attendants were at the point of turning the bed down the hall. White testified that the bed always binds on the right side of the doorway when the turn begins. On this occasion, White moved the left side of the bed. The right side of the bed was freed; the bed moved toward Bailey, who was near the wall; and the bed's metal rail, which was situated 19 inches from the floor, struck Bailey on her knees.

The following day, Bailey went to the emergency room at St. Joseph Hospital with complaints of severe pain in her knee. On July 11, 1985, Bailey's orthopedic surgeon, a Dr. Fitzgibbon, performed arthroscopic surgery on Bailey's left knee. Bailey's surgeon thereafter prescribed therapy to strengthen the knee.

Bailey did not adhere to this regimen and subsequently sought the advice of a Dr. Ries, another orthopedic surgeon.

On March 10, 1986, Dr. Ries performed lateral release surgery on Bailey's left knee to correct an abnormal sideways movement, or subluxation, of the kneecap. The surgical wound became infected a few days after surgery, and Bailey was confined to the hospital for several weeks. As a result, Bailey was absent from school and graduated one semester later than she expected. Bailey's left kneecap was entirely removed in January 1987 to correct the subluxation of the kneecap. Bailey's total medical expenses were $55,633.55.

Bailey filed suit against AMISUB and White on April 18, 1986, alleging negligence on the grounds that White failed to keep a proper lookout and control over the bed, and failed to warn Bailey of the bed's proximity to the wall. On the day trial began defendants were given leave to amend their answer to include the defense of mitigation of damages.

The case was tried to a jury. The defendants twice moved for a mistrial: first, when Bailey mentioned that she could not continue rehabilitative therapy because she had no health insurance, and second, after Bailey's counsel delivered rebuttal to defendants' closing argument. Both motions were denied.

On August 2, 1989, the jury, after deliberating for over 7 hours, returned a verdict of $126,516 against the defendants. The trial court noticed that the verdict form was improperly signed by all 12 jurors, instead of by the foreman alone, as required by Neb. Rev. Stat. § 25-1123 (Reissue 1989). The court then polled the jury and determined that only 10 jurors agreed with the verdict and sent the jury back to the jury room. The jury returned within 30 minutes with a verdict form properly signed by only 10 jurors. However, the verdict had been reduced by $6,516 to $120,000.

After trial, the defendants first moved for expenses in connection with discovery had in California to authenticate documents relating to Bailey's previous medical conditions. This motion was overruled. Bailey then moved to vacate the order entering judgment of $120,000 and to reinstate the former verdict of $126,516. This motion was overruled. Finally, the defendants moved for a new trial, which was overruled.

AMISUB and White have filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

On appeal the defendants assign the following errors: (1) The district court erred in overruling defendants' motion for mistrial after Bailey, on direct examination, inadvertently mentioned her lack of health insurance; (2) the district court improperly instructed the jury that it might take into consideration Bailey's lost time up to trial, since Bailey was a student at the time of her injury and had no specific income; (3) the verdict of $120,000 against defendants was excessive, and the court erred by not granting a new trial; (4) the district court erred in overruling defendants' motion for mistrial or for curative instruction when Bailey's counsel in rebuttal during closing argument mentioned Bailey's lack of funds; and (5) the court erred in overruling defendants' motion for discovery sanctions against Bailey.

## III. ANALYSIS OF DEFENDANTS' CONTENTIONS

### 1. BAILEY'S ABILITY TO PAY

Defendants made a motion in limine to exclude all reference to insurance. Nevertheless, during her direct examination Bailey inadvertently mentioned that she lacked health insurance. Moreover, in his closing argument counsel for Bailey made reference to exhibit 78, an application Bailey made for Social Security disability benefits on August 21, 1985.

### (a) Bailey's Reference to Health Insurance

We first consider Bailey's reference to her lack of health insurance. Defendants claim that it was an abuse of discretion for the trial court to overrule their motion for mistrial after Bailey inadvertently mentioned her lack of health insurance. There are no Nebraska cases dealing with inadvertent mention of health insurance, however, the cases clearly state that evidence of a defendant's liability insurance is irrelevant and inadmissible and that its admission is a ground for mistrial. See, e.g., *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 473 N.W.2d 94 (1991); *Kresha v. Kresha*, 216 Neb. 377, 344 N.W.2d 906 (1984); *Fielding v. Publix Cars, Inc.*, 130 Neb. 576,

265 N.W. 726 (1936). See, also, Neb. Rev. Stat. § 27-411 (Reissue 1989). However, the Nebraska Supreme Court has never held that admission of evidence of plaintiff's lack of health insurance is a ground for mistrial.

Other jurisdictions have held that inadvertent mention of a plaintiff's insurance is not prejudicial error. See, *Red Ball Motor Freight, Inc. v. Cordova*, 332 S.W.2d 753 (Tex. Civ. App. 1960); *Coffindaffer v. Coffindaffer*, 161 W. Va. 557, 244 S.E.2d 338 (1978).

Since the indemnification of defendants does not logically follow from the fact that Bailey lacked health insurance, it cannot be said that defendants necessarily were prejudiced. Here, there was only the possibility of prejudicial error, since the defendants have not shown that the jury made the forbidden inference from Bailey's lack of health insurance to defendants' indemnification. See *Battle v. Strother*, 171 Ga. App. 418, 319 S.E.2d 887 (1984).

Nor have defendants affirmatively shown that the jury made the forbidden inference that because Bailey lacked health insurance she was unable to pay. As we will discuss below in part III(1)(b), Bailey's counsel properly relied on the Social Security application to rebut mitigation of damages; however, Bailey's lack of health insurance was not so used.

On appeal the party asserting an abuse of discretion has the burden of proving that claim. *Diplomat Inn, Inc. v. Weindorf*, 206 Neb. 565, 293 N.W.2d 861 (1980). Since the defendants in this case have not proved that they were prejudiced by Bailey's inadvertent mention of health insurance, we conclude that it was not an abuse of discretion for the trial court to overrule their motion for mistrial on this ground.

### (b) Social Security Application

We next consider the Social Security application. Defendants claim the trial court erred in overruling their motion for mistrial because in closing argument counsel for Bailey stated that a person applies for such benefits "[b]ecause you don't have the funds." Specifically, in his closing argument counsel for Bailey stated:

You are going to get an exhibit, Mr. Danberg will talk to

you about her application for disability determination. You know why you do that? Because you don't have the funds. And she just plain flat didn't have the funds to do it. So what are you going to do, go listen to a doctor that tells you, "Yes, go to physical therapy." There are charges for physical therapy, and, "I can do the things at home. Why not do that?" And that's what she did.

The defendants had introduced the application for disability benefits for the purpose of impeaching Bailey's testimony that prior to her injury at St. Joseph, she had never seen a Dr. Katz for an injury to her left knee.

In their brief defendants state: "It has long been the rule in Nebraska that evidence of the financial standing of the parties is clearly inadmissible." Brief for appellants at 22. Defendants cite in support *Taulborg v. Andresen*, 119 Neb. 273, 228 N.W. 528 (1930), a case which concerned the financial standing of the defendant. In *Taulborg v. Andresen* counsel for the defendants mentioned that the defendants were living on a rented farm, and one of the defendants testified that he had no insurance on his car at the time it was involved in an accident with the plaintiff's car. In *Singles v. Union P. R.R. Co.*, 174 Neb. 816, 824, 119 N.W.2d 680, 684 (1963), the court applied *Taulborg v. Andresen* and specifically held that "where the defendant in a personal injury case makes no attempt to show the plaintiff is receiving a pension, it is not proper for the plaintiff to offer testimony showing he received a small and inadequate one." The court there repeated the rule stated in *Taulborg v. Andresen*.

Significant for this case is the fact that defendants introduced the application for Social Security benefits. The rule in *Singles* specifically provides for the instance when the defendant does not introduce evidence of plaintiff's financial standing. Here, the defendants did introduce such evidence.

The application for Social Security benefits is covered by the rule that "a litigant cannot initially introduce evidence and later complain about such evidence adduced." *Mandery v. Chronicle Broadcasting Co.*, 228 Neb. 391, 404, 423 N.W.2d 115, 123 (1988). Cf. *State v. Roggenkamp*, 224 Neb. 914, 921, 402 N.W.2d 682, 687 (1987) ("[o]ne who consents cannot receive an

injury").

Moreover, the record shows that Bailey's counsel commented on the exhibit for the proper purpose of rebutting the defense of mitigation of damages. Evidence concerning a party's ability to pay is admissible when mitigation of damages is an issue. See *Colton v. Benes*, 176 Neb. 483, 126 N.W.2d 652 (1964). See, also, Restatement (Second) of Torts § 918, comment *e*. (1979).

Since Bailey's failure to mitigate damages was an issue at trial, it was not prejudicial for Bailey's counsel to comment on exhibit 78. Under the circumstances, we cannot conclude that the trial court abused its discretion in overruling the defendants' motion for mistrial.

## 2. LOST TIME

Defendants assign as error the trial judge's giving an instruction on lost working time. In instruction No. 18 the trial judge told the jury it might consider: "3. The reasonable value of the working time the plaintiff has lost because of her inability or diminished ability to work. 4. The reasonable value of the earning capacity the plaintiff is reasonably certain to lose in the future." See, also, NJI2d 4.01.

Lost earnings up to the time of trial are an element of special damages and must be specifically pleaded and proved. See *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964). Bailey specifically pleaded $10,000 in lost wages. Defendants argue that Bailey introduced no evidence on earnings lost up to the time of trial.

Generally, the rule in Nebraska is that " '[w]here it has been proved that damage has resulted and the only uncertainty is the exact amount, it is sufficient if the record shows data from which the extent of the injury can be ascertained with reasonable certainty.' " *Caster v. Moeller*, 176 Neb. 30, 44, 125 N.W.2d 89, 97 (1963), *reh'g denied* 176 Neb. 446, 126 N.W.2d 485 (1964).

*Caster v. Moeller* involved a plaintiff who missed 4 to 9 days per month from work up to the time of trial and also missed several weeks due to medical treatment. Plaintiff also lost his job when his employer went out of business. The evidence adduced was plaintiff's "hourly base pay and average weekly

income." *Id*. at 43, 125 N.W.2d at 97. The trial court's instructions withdrew consideration of loss of past earnings.

The Nebraska Supreme Court reversed. The court stated:

> Some of the evidence as to this loss of time is not as definite as might be desired. We think however the evidence was sufficiently certain for the jury to consider and determine plaintiff's loss of earnings while he worked for the same company. Also after it went out of business the earnings he had previously received might be considered by the jury as a measure of compensation he might be expected to have earned for his work after hospitalization, when he could not work at all.

*Id*. at 43-44, 125 N.W.2d at 97.

In *Laun v. Roach*, 191 Neb. 11, 213 N.W.2d 450 (1973), the plaintiff was a senior dental student at the time of the accident. The defendant drove his vehicle into the rear of plaintiff's automobile. Plaintiff had been a practicing dentist for a year and a half up to time of trial. Plaintiff's testimony was that the injury to his back reduced his daily hours worked by 20 to 30 minutes. Plaintiff's hourly billing rate was $25. The Supreme Court held that this was sufficient evidence of lost earnings for submission of the issue to the jury.

This case differs from *Caster* and *Laun* because Bailey was a student at the time of her injury and was not employed thereafter. Nevertheless, sufficient evidence was adduced to establish the value of Bailey's lost time with a reasonable certainty.

In the case at bar Bailey was in the C.R.N.A. program at the time of the accident. After the accident she continued in her coursework through the fall of 1985, but complications with her injured knee required her to have lateral release surgery on the knee joint in March 1986. The surgical wound became infected, and she remained hospitalized from March 18 to April 25, 1986. In March 1986 at the time of her lateral release surgery she anticipated graduating in August 1986. Because of the infection, she completed her coursework and graduated in December 1986. The trial began on July 24, 1989. Bailey had worked 1 month in the pretrial period, having obtained a job as a C.R.N.A. in October 1988, when she earned a minimum of

$125 per day.

The evidence adduced by Bailey was her own testimony and that of two witnesses, Dr. Ries, an orthopedic surgeon, and Alfred Marchisio, a rehabilitation counselor. Bailey's expert witness, Dr. Ries, testified that Bailey was disabled from January 1986 to January 1988. The evidence on the extent of Bailey's disability was in conflict.

In the period after her injury and before the time of trial, Bailey applied for and was denied employment as a C.R.N.A. at several hospitals. There was conflicting evidence on whether she was denied employment due to her injury or due to her deficient performance in her clinical coursework. Before Bailey began her schooling she was working part time as an R.N. Marchisio testified that an R.N. with Bailey's qualifications would earn a salary of $35,000 per year in 1986 and that Bailey could be expected to earn $26,000 to $40,000 as a C.R.N.A.

> In considering whether the evidence in a civil case is sufficient to sustain findings necessary for a verdict, this court will not reweigh the evidence, but considers the verdict in a light most favorable to the successful party and resolves evidential conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

*Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 508, 428 N.W.2d 152, 156 (1988). Resolving all conflicts in favor of Bailey, we conclude that there was sufficient evidence to sustain a jury's finding that Bailey lost time after August 1986, when she was scheduled to graduate, to the time of trial.

The mere fact that a plaintiff is unemployed at the time of his or her injury does not, in and of itself, preclude recovery for the value of time lost up to the time of trial. *Riddle v. Anderson*, 85 Pa. Commw. 271, 481 A.2d 382 (1984); *Rieth-Riley Constr. Co. v. McCarrell*, 163 Ind. App. 613, 325 N.E.2d 844 (1975); *Hodges v. Plasky*, 300 S.W.2d 955 (Tex. Civ. App. 1957); 22 Am. Jur. 2d *Damages* § 155 (1988). See, also, 25 C.J.S. *Damages* § 86 (1966).

The rule in Nebraska since *Carlile v. Bentley*, 81 Neb. 715, 116 N.W. 772 (1908), has been that a plaintiff may recover for the value of lost time up to trial so long as the value of the lost

time is proved with reasonable certainty.

In the case at bar the testimony of Marchisio established the value of the time Bailey lost due to her injury and was sufficient for the jury to make its determination with reasonable certainty. "A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any evidence presented to the jury upon which it could find for the successful party." *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 307, 436 N.W.2d 151, 164 (1989). Since there was sufficient evidence, it was not an abuse of discretion for the trial judge to instruct the jury on lost time.

### 3. Motion for New Trial

The defendants claim the trial judge committed error by failing to grant a new trial after plaintiff mentioned irrelevant and prejudicial matters that resulted in an excessive verdict. Defendants base this assignment on Neb. Rev. Stat. § 25-1142(4) (Reissue 1989), which requires a trial court to vacate an award appearing to have been given under the influence of passion or prejudice.

The court has stated that "passion or prejudice is shown when the verdict shocks the conscience." *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 643, 452 N.W.2d 270, 280 (1990). In *Crewdson* the jury awarded $1,135,770, reduced to its present value of $510,000, to the parents of the decedent in a wrongful death action. The court stated: "We conclude that in view of the evidence, the jury verdict in regard to the amount of damages shocks the conscience." *Id.* at 645, 452 N.W.2d at 281.

The present case is unlike *Crewdson* in that it involves a plaintiff who has recovered for pain and suffering. The Supreme Court has held:

> "In awarding damages for physical discomfort and mental anguish, the fact finder must rely upon the totality of the circumstances surrounding the incident. The credibility of the evidence and the witnesses and the weight to be given all of these factors rest in the sound discretion of the fact finder."

*Woitalewicz v. Wyatt*, 229 Neb. 626, 630, 428 N.W.2d 216, 219

(1988) (quoting *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984)).

In the present case Bailey adduced extensive evidence on pain and suffering. This took the form of Bailey's own testimony. There was also testimony by Dr. Ries, Bailey's expert, concerning the past and future pain caused by Bailey's infected surgical wound. The testimony of Suzanne Baldwin was also adduced.

Defendants cite the case *Motis v. Manning*, 200 Neb. 593, 264 N.W.2d 844 (1978), for the proposition that the court will consider the mention of insurance as one of the factors for determining whether an award is based on passion or prejudice. However, this is not a precise statement of the holding in that case. The *Motis* court stated that the award of $24,990.35 for a whiplash injury would ordinarily not be considered excessive, but that the case had to be remanded because plaintiff's expert mentioned liability insurance. Because there was conflicting evidence on the nature and degree of plaintiff's disability, the court said it could not exclude the possibility that the mention of liability insurance influenced the jury.

*Motis* is not applicable to the present case, in which only the plaintiff's lack of health insurance was mentioned, and that only once. Further, the testimony was unlike that in *Motis*, in which the expert repeatedly mentioned liability insurance and the repetition was aggravated by the trial judge's calling it to the jury's attention.

The standard of review of an order granting a new trial is whether the trial court abused its discretion. A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. See, *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Lemke v. Northwestern Public Serv. Co.*, 233 Neb. 223, 444 N.W.2d 326 (1989); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

The trial court did not abuse its discretion in denying defendants' motion for a new trial. Accordingly, there was no

error.
#### 4. CLOSING ARGUMENT
Defendants moved for a mistrial on the ground that Bailey's counsel in rebuttal made statements that the defendants considered prejudicial. Defendants assign as error the fact that the trial court failed to give a curative instruction and overruled their motion for mistrial.

Conduct of final argument is within the discretion of the trial court, and a trial court's ruling regarding final argument will not be disturbed absent abuse of that discretion. *Sundeen v. Lehenbauer*, 229 Neb. 727, 428 N.W.2d 629 (1988) (citing *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984)).

In support of their contention defendants cite *Sandomierski v. Fixemer*, 163 Neb. 716, 81 N.W.2d 142 (1957), which stands for the proposition that a party may not induce a larger verdict by argument calculated to distract the jury's attention from the issues or by prejudicial statements that have no support in the evidence. See *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991).

In the case at bar, the comments of counsel either had a foundation in the evidence or, if they had no foundation, were proper retaliation to similar comments by defendants' counsel. See, *Smith v. Damato*, 172 Neb. 811, 112 N.W.2d 21 (1961); *Hoopes v. Creighton*, 100 Neb. 510, 160 N.W. 742 (1916); *Smith v. Royal Highlanders*, 96 Neb. 790, 148 N.W. 952 (1914); *Nebraska Savings & Exchange Bank v. Brewster*, 59 Neb. 535, 81 N.W. 441 (1900). The question is whether defendants invited plaintiff's retaliation. It has been said in regard to the invited response rule:

> The argument of the opponent must be such as to warrant the retaliation, and it has been recognized that improper conduct by one party does not give the other unlimited leeway to appeal to the jury's prejudices, but that the retaliatory argument should be adjusted to the offense to which it is a reply.

75A Am. Jur. 2d *Trial* § 564 at 145-46 (1991).

In the first ground of misconduct, defendants argue that counsel for Bailey asserted a personal opinion concerning the culpability of a party, in contravention of Canon 7, DR

7-106(C)(4), of the Code of Professional Responsibility.
Defendants refer specifically to counsel's comment in rebuttal:

> I was hoping [Mr. Danberg] wouldn't do this, get into the talk about her character and how she didn't get along with people. Did that have really any bearing on whether or not this woman was hurt by the negligence of the hospital or that she sustained injury and can't get a job? What he wants to do is bring in those peripheral issues. Now that she's down, let's kick her and let's bring up all of this muck. Something that's got absolutely nothing to do with your decision. I think it's high time that that is stopped.

Relying on *Graham v. Simplex Motor Rebuilders*, 191 Neb. 320, 215 N.W.2d 641 (1974), defendants argue that counsel went outside the issues and stated matter calculated to prejudice the jury.

However, defendants in their brief omit two sentences from the plaintiff's closing argument. In the full passage quoted above, Bailey's counsel can be seen to say that Bailey's character has nothing to do with the issues of negligence, causation, and damages. Counsel was not commenting on the culpability of a party, but on the rhetoric of defense counsel. Moreover, in closing argument defendants' counsel had already raised the issue of Bailey's inability to get along with her fellow students. Plaintiff engaged in proper retaliation.

The second ground of misconduct is that plaintiff's counsel insinuated that AMISUB's policies encourage injuries. However, the words of defendants' counsel invited the response that the regular practice for nurses in moving beds was to be inattentive to one another's safety: "Are we going to say that it's wrong for people at the hospital to be watching a critically-ill patient? That we should have our nurses rubber-necking around and looking at each other checking each other out?"

The third claim of misconduct is based on the statement by plaintiff's counsel that AMISUB used its influence to prevent Bailey from securing employment, although no evidence had been presented on this point. However, there was support in the evidence for counsel's statement, since defendants' witnesses throughout the trial had implied that Bailey's character was a factor in her inability to secure employment. Moreover, it was

brought out on cross-examination that at least one witness who commented unfavorably on Bailey's clinical coursework was employed by a group of anesthesiologists who received virtually all their revenue directly from defendant AMISUB. Not only was there support in the evidence for counsel's comment, but in closing defendants' counsel referred to "unspecified personal problems that played a role in [Bailey's unsatisfactory] performance." Counsel in rebuttal was entitled to respond.

Finally, defendants object that plaintiff's counsel suggested that AMISUB should have helped Bailey secure a job when she had medical bills to pay instead of providing unfavorable recommendations to Bailey's prospective employers. Defendants have not on appeal shown that this comment, which was not strictly responsive to anything said by defendants, was prejudicial.

It will not be presumed that passion and prejudice influence the action of jurors, but it must be affirmatively shown before a verdict will be disturbed. *Smith v. Damato*, 172 Neb. 811, 112 N.W.2d 21 (1961).

This court will not presume that the comments of plaintiff's counsel introduced passion or prejudice into the jury's deliberations. In the absence of prejudice resulting therefrom, misconduct in argument is not a ground for reversal. *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991).

Because we find no prejudice, it was not an abuse of discretion for the trial court to fail to give a curative instruction and to overrule defendants' motion for mistrial.

### 5. DISCOVERY SANCTIONS

Defendants assign as error the fact that the judge overruled their motion for sanctions in connection with discovery. Defendants requested that Bailey admit the authenticity of 68 pages of legal and medical documents.

The record shows that defendants took depositions in California on July 21, 1989. The facts leading up to these depositions are somewhat complicated.

On June 16, 1989, the defendants filed a motion for leave to permit them to take foundational depositions in California. On

June 26, the motion was sustained. However, the defendants did not take depositions at this time.

On July 5, 1989, the defendants moved for permission to file requests for admissions. On July 6, this motion was granted.

On July 11, 1989, Bailey filed objections to defendants' requests for admissions. Specifically, Bailey objected that request No. 1 was unduly burdensome, vague, and ambiguous as to whether the document required to be admitted was a genuine copy of an original; request No. 2 was unduly burdensome and required legal conclusions; and request No. 3 was unduly burdensome, could not be answered in 5 days, and was ambiguous as to what constitutes a genuine and true copy.

On July 17, 1989, a hearing was held on defendants' motion to have the requests deemed admitted; this motion was denied. The court ordered Bailey to answer the requests by July 19.

On July 19, 1989, Bailey answered the requests by stating that she lacked the information to admit or deny the medical records.

On July 21, 1989, the defendants took the depositions of doctors who prepared the medical records and custodians of records in San Francisco, California.

On appeal, defendants argue that Bailey's failure on July 19 to admit the authenticity of the medical records constituted an admission. Defendants cite the case of *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986), and argue that the trial court ought to have awarded sanctions pursuant to Neb. Ct. R. of Discovery 37(c) (rev. 1989), which provides:

> Expenses on Failure to Admit. If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he or she may apply to the court for an order requiring the other party to pay him or her the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that:
>
> (1) The request was held objectionable pursuant to Rule 36 (a), or
>
> (2) The admission sought was of no substantial

importance, or

(3) The party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or

(4) There was other good reason for the failure to admit.

In *Arcadia State Bank v. Nelson* the creditor bank filed interrogatories and requests for admission on the debtor and his son on May 24, 1984. Neither party answered, and the bank filed a motion on September 18, 1984, to have the requests deemed admitted. A hearing was then held at which the court denied the bank's motion and granted the debtor and his son additional time to answer. On November 2, 1984, the son filed admissions that were evasive. The Supreme Court held that the court ought to have sustained the bank's motion to have the answers deemed admitted. The court relied on *Kissinger v. School District No. 49*, 163 Neb. 33, 37, 77 N.W.2d 767, 770 (1956), in which the court stated:

[T]he applicable rule here is that where a party properly serves a request for admissions of relevant matters of fact or the genuineness of relevant documents, and all objections thereto are heard and appropriately denied by the court, and the other party has been ordered to respond thereto, his failure to do so within the time alloted [sic] constitutes an admission of the facts sought to be elicited.

(Cited with approval in *Arcadia State Bank v. Nelson, supra.*)

The facts as set forth above show that this case is outside the rule stated in *Kissinger*. In this case Bailey objected to defendants' requests for admissions, the court denied the objections, and Bailey was ordered to respond. However, the plaintiff in this case, unlike the parties in *Arcadia State Bank v. Nelson*, did respond within the time allotted. And the plaintiff, unlike the defendant in *Kissinger*, did object to the requests propounded where she did not admit or deny them. The defendant in *Kissinger* was the school district, and the district neither admitted nor denied the requests propounded, nor did it furnish legal reasons for objecting to them. The *Kissinger* court found the district's conduct improper because "[t]he information here sought was in the possession of the secretary of the district or the county treasurer of Clay County." *Kissinger*

*v. School District No. 49*, 163 Neb. at 38, 77 N.W.2d at 770.

In the present case, the trial court could have concluded, based on Bailey's objections, that "[t]here was other good reason for the failure to admit," as provided in rule 37(c)(4). Specifically, document page Nos. 1 through 3 were from the Workers' Compensation Appeals Board of California. Bailey could not reasonably be expected to admit to the foundation of documents she did not prepare, even though they appear to be public records. Document page Nos. 5 through 68 were reports by physicians not prepared by Bailey. Three of them contained handwritten notations with no indication of the preparer.

As the court stated in *Kissinger*, "[t]he purpose of the rule is to expedite the trial and to relieve parties of the cost and inconvenience of proving facts which will not be disputed on the trial, the truth of which can be ascertained by reasonable inquiry." 163 Neb. at 38, 77 N.W.2d at 770. In this case, the truth of document page Nos. 5 through 68 could not be ascertained by reasonable inquiry.

"Trial courts have broad discretion with respect to sanctions involving discovery procedures." *Chief Indus. v. Hamilton Cty. Bd. of Equal.*, 228 Neb. 275, 279, 422 N.W.2d 324, 327 (1988). See, also, *D.S. v. United Catholic Soc. Servs.*, 227 Neb. 654, 419 N.W.2d 531 (1988).

We also recall that judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in a matter submitted for disposition through the judicial system. *Brooke v. Brooke*, 234 Neb. 968, 453 N.W.2d 438 (1990); *Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56 (1988). The trial judge's ruling was not clearly untenable; therefore, there was no abuse of discretion.

## IV. BAILEY'S CROSS-APPEAL

In her cross-appeal Bailey assigns as error the fact that the trial judge sent the jury back to deliberate after he discovered disagreement among the jurors. A journal entry for the court on August 2, 1989, shows the following:

At 12:42 p.m. jury convenes in open court and returns a

verdict form finding for plaintiff and assessing amount of plaintiff's recovery in the sum of $126,516.

Verdict form was signed by all twelve jurors.

Upon questioning jurors about irregularity in form, court determines that only ten jurors of the twelve who signed are in agreement.

The court sent the jury back to the room to deliberate. After approximately 30 minutes it returned with a verdict form properly signed by 10 of the 12 jurors. See Neb. Rev. Stat. § 25-1125 (Reissue 1989). However, the jury reduced Bailey's award by $6,516 to $120,000. On September 29, 1989, Bailey moved to vacate the judgment and reinstate the previous verdict, and the motion was denied.

In support of their respective positions, both Bailey and the defendants cite § 25-1123, which provides:

The verdict shall be written, signed by the foreman, and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete, and the jury discharged from the case. If, however, the verdict be defective in form only, the same may, with the assent of the jury before they are discharged, be corrected by the court.

Based on the plain language of this statute, we hold that the two jurors' disagreement with the verdict was not a defect of form only; therefore, by the plain statutory language the judge was required to send the jury out once he discovered the disagreement.

Bailey argues that there was no disagreement among the jurors because the verdict was valid under § 25-1125. Section 25-1125 provides:

In all trials in civil actions in any court in this state, a verdict shall be rendered if five-sixths or more of the members of the jury concur therein, and such verdict shall have the same force and effect as though agreed to by all members of the jury; *Provided*, that a verdict concurred in by less than all members of the jury shall not be rendered until the jury shall have had an opportunity for

deliberation and consideration of the case for a period of not less than six hours after the same is submitted to said jury. If a verdict be concurred in by all the members of the jury, the foreman alone may sign it, but if rendered by a less number, such verdict shall be signed by all the jurors who shall agree to the verdict.

Bailey essentially argues that the jury in the case at bar had deliberated for more than 6 hours and that the 10 to 2 vote has "the same force and effect as though agreed to by all members of the jury." If that is the case, then there truly was no disagreement, and the defect in the verdict was one of form only.

If Bailey's interpretation of § 25-1125 is accepted, the two statutes are inconsistent. Section 25-1123 is mandatory. But on Bailey's interpretation of § 25-1123, even if the jurors disagree, the defect is one of form only and the mandatory language of § 25-1123 is of no effect. As the following analysis shows, Bailey's interpretation must be rejected.

Section 25-1125 was enacted 54 years after § 25-1123. The court has said: "All statutes relating to the same subject are considered as parts of a homogeneous system, and later statutes are considered as supplementary to preceding enactments. Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together." *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 30, 430 N.W.2d 34, 39 (1988).

The court also has stated that "[c]ourts should not give an interpretation to a statute which would have the effect of nullifying another statute, when obviously that was not the clear legislative intent." *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. at 30, 430 N.W.2d at 40.

In the case at bar, since there is no legislative history on the later statute showing an intent to nullify the earlier, it must be presumed that the Legislature intended § 25-1123 to have its full effect even after enactment of § 25-1125. See *Wahlers v. Frye*, 205 Neb. 399, 288 N.W.2d 29 (1980). Therefore, even though § 25-1125 provides that a five-sixth decision is valid after the jury has deliberated for 6 hours or more, § 25-1123 would still cover all situations where there is disagreement

among jurors. See *Stradinger v. Hatzenbuhler*, 137 N.W.2d 212 (N.D. 1965) (holding on basis of similar statutes reversible error not to send the jury out when disagreement is found).

Bailey relies on a rule of decisional law in addition to the statutory rule. Bailey cites *Davis v. Neligh*, 7 Neb. 78 (1878), for the proposition that where a defect in a verdict is in form only, the court may direct the jury to amend it, or it may be amended by the court with the consent of the jury before it is discharged.

The distinction has long been made between errors of substance and errors of form in the announcement of a jury's verdict. The authorities state that where the jury is unanimous in its agreement with the verdict announced in open court, and there is merely a clerical error in transmission of the verdict, the court may correct the verdict form to express the jury's true intentions. See, 8 John H. Wigmore, Evidence in Trials at Common Law § 2355 (John T. McNaughton rev. 1961); *Eich v. State Farm Mut. Automobile Ins. Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981). Cf. *Forslund v. Swenson*, 110 Neb. 188, 192 N.W. 649 (1923).

In the case at bar the attorneys stated at oral argument that they were not present when the verdict was announced in open court. The only record of what transpired when the jury was polled is the court's journal entry. This shows that two jurors were in disagreement with the first verdict of $126,516. Since there was not unanimous assent to the verdict, this was not a mere clerical error. It has been said with respect to the rule allowing a court to correct a defect in form:

> [R]easons of policy here . . . permit a departure from the general rule that formal acts of assent are conclusive, for a unanimous or mutual error can safely be inquired into and easily established, while an individual error opens a wide door for vacillation and uncertainty. As individuals, [jurors] must be judged by their open acts, but as an entire jury they may be trusted to correct that which is merely an error in the transmission of their act from the jury room to the courtroom.

8 Wigmore, *supra*, § 2355 at 719.

The foregoing authority implies that a court may correct a jury form only when the jurors are unanimous in their assent to

the verdict; it also makes clear that *Davis v. Neligh, supra*, does not apply to the case at bar.

In *Davis* the verdict returned was: " 'We the jury, duly impaneled and sworn in the above cause, do find no cause for action.' " 7 Neb. at 83. This verdict was unanimous, and the court simply changed the verdict form to: " ' "We find for the defendant." ' " *Id.*

In the case at bar, by contrast, although all 12 jurors signed the verdict form, they were in disagreement. Since the jury was in disagreement, the trial judge sent the jury back to deliberate, as is required by § 25-1123. There was no error by the trial court. Bailey's cross-appeal is dismissed.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.